CASE 32—PETITION EQUITY—APRIL 3.

# Stone, Committee, &c., v. Cromie.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. APPEALS—JURISDICTION.—Where an appeal granted by the lower court has been taken to the Superior Court, and the record discloses the fact that this court, and not the Superior Court, has jurisdiction of the appeal, the appeal will be treated as if it had been pending in this court from the time the record was filed with the clerk of this court, who is also, by virtue of his office, the clerk of the Superior Court; and any orders made by the Superior Court will be treated as a nullity.

2. SAME.—This court will take jurisdiction, although the order granting appeal recites that the appeal was asked and granted to " the *Supreme* Court." It is evident that the *Superior* Court was intended, but even

Stone, Committee, &c., v. Cromie.

if not, the appeal is now pending in what is to the lower court, as far as appeals are concerned. the *Supreme* Court.

3. FRAUD IN SALE OF LUNATIC'S ESTATE.—In this action by the committee of a lunatic to set aside a sale of the lunatic's estate made under a decree obtained by a former committee, the undue haste attending the sale, and the hurried subsequent proceedings relating to it, readily create suspicion, and the sacrifice of the property and the helplessness of the lunatic demand that the sale shall be vacated, unless supported by entire fairness and good faith.

Appellee had loaned to the former committee a bond, which the latter had pledged for his individual benefit. The committee agreed with appellee that if he would buy the lunatic's property, he (the committee) would use enough of the proceeds to redeem the bond, and return it. A decree for the sale of the property was obtained, and appellee became the purchaser. *Held*—That this was *at least* a constructive fraud, to which the purchaser was a party, and he cannot, therefore, be allowed to retain the benefit of his bargain. He will be allowed a lien upon the property for so much of the proceeds as were used in discharging the liabilities of the lunatic, with interest, being first charged, however, with the value of the use of the property.

A. P. HUMPHREY AND RODMAN & BROWN FOR APPELLANTS.

1. An agreement, through the form of a judicial sale, between the committee of a lunatic and the purchaser, whereby the purchaser gets the property of the lunatic for less than its value, and gives in part payment an individual debt owing him by the committee, is void for fraud.

2. In a judicial proceeding by a committee to sell the lunatic's land the wife of the lunatic is a necessary party. (Civil Code, sec. 492.)

CHARLES H. GIBSON FOR APPELLEE.

In deciding a case presented by the record, the Court of Appeals cannot consider the record of another case in the same or in any other court unless such record is by annexation made a part of the case being considered. (Bank v. Bryant, 13 Bush, 423.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

J. B. Cochran, as the committee of Gustavus Trunk, procured a decree on June 27, 1879, in the Louisville Chancery Court, to sell a lot of land belonging to the lunatic. In the proceeding he executed bond in conformity to section 493 of the Civil Code, with W. N.

Huling and D. M. Rodman as his sureties. The judgment reserved the potential right of the lunatic's wife in the property; directed its sale upon six, twelve and eighteen months' time, with interest from day of sale, and that the committee, as he collected the purchase money, should pay out of it, first the cost of the suit and of another action brought by the former committee, and then apply the balance of it to the lunatic's indebtedness to the Eastern Kentucky Lunatic Asylum, where he was confined, and to his future support in that institution. It was not a party to the proceeding. The property was sold on July 7, 1879, and purchased by the appellee, Isaac Cromie, at one thousand nine hundred dollars. It was then worth at least three thousand five hundred dollars. The sale was at once reported to the court, and on July 10, 1879, an order was entered, reciting that all the parties in interest waived all exceptions to the sale; that it was confirmed; that thereupon Cromie paid into court the entire purchase money, which the committee was allowed to withdraw, and the committee was directed to execute a deed to the purchaser. All this was evidently done with dispatch, and not upon the usual motion day of the court. The committee executed the deed in conformity to the order two days thereafter. Cochran, as committee, appears to have paid to the asylum two hundred and twenty-six dollars and ten cents on its claim, and probably paid the costs named in the judgment. In April, 1881, he was removed, and the appellant, Stone, was appointed the committee. During the same month the asylum, joining with it as a co-plaintiff the lunatic by a next

friend, brought suit in the Jefferson Common Pleas Court against the sureties, Huling and Rodman, to recover from them, and have applied upon its claim, the money for which the lot had been sold, less the costs of the suits, ordered to be paid by Cochran, and the amount it had received from him. The committee, Stone, was also made a defendant, and it was averred that he had refused to sue the sureties. ·

Several defenses were presented, among them being one to the effect that in June, 1881, the then committee had brought an action in the Louisville Chancery Court to set aside the sale to the appellee, Cromie, upon various grounds, one being that the sale was the result of a fraudulent combination between the then committee and the purchaser, and that it was then pending. The suit so named is the one we are now considering.

The action by the asylum was transferred to the chancery court, where the two cases were ordered to be "heard together." This was in effect an order of consolidation, and should be so regarded. It was properly made, because of the connection between the two actions, the one depending upon the result in the other.

The court rendered a joint judgment in accordance with a written opinion, disposing of both actions, but the caption only gives the style of what, for convenience sake, we will call the asylum suit. It refused to vacate the sale, and allowed the asylum, as against the sureties of Cochran, one thousand five hundred and forty-five dollars and sixty cents, being the portion of the purchase money of the lot that Cochran, in its opinion, had failed to account for; but it also found that Cochran had, in effect, used eight hundred dollars

of the purchase money to repay his individual debt to Cromie ; that this had been done by agreement between them, and was in legal contemplation a fraud ; and it therefore held that Cromie had, in fact, paid but one thousand one hundred dollars of the one thousand nine hundred dollars of purchase money, and rendered a judgment against him in favor of the new committee for eight hundred dollars, with a lien upon the lot for its payment, and further provided that, upon the payment by the sureties of the judgment against them, they should be entitled to the benefit of the eight hundred dollar judgment against Cromie. The sureties appealed from the judgment in favor of the asylum against them, and Stone, as committee, took this appeal, because the judgment did not vacate the sale. It was granted in the lower court, and the order recites, that it was asked and granted to "the *Supreme* Court." It is now urged that, as there is no such appellate tribunal in this State, there is, therefore, no appeal pending. This objection is quite technical.

Evidently the word "Supreme" was intended for 'Superior," and was a clerical mistake ; but, in any event, if the appeal be now pending in this court, it is in what is to the lower court, so far as appeals are concerned, the Supreme Court.

The statement for the appeal in the asylum case was made out for this court ; it was brought here, and reversed on January 10, 1885, this court in substance holding, that where the creditor of a lunatic is suing to recover from the sureties of a committee the purchase money the latter has obtained by a sale of the lunatic's property, and the successor of the defaulting

vol. 87—12

trustee is suing to set aside the sale as fraudulent, the latter has the right to choose the remedy. (Trunk's Committee v. Eastern Kentucky Lunatic Asylum, &c., 6 Ky. Law Rep., 521.)

In some way, probably by mistake, the statement for the appeal in this case was made out for the Superior Court, while the schedule in directing what portions of the record should be copied, provided that no part of it that had been copied in the transcript of the asylum case should be again copied. This doubt-less arose from the supposition of the attorney that both appeals would (as would have been proper) be in the same appellate court.

As the petition in this action, the opinion and judgment of the court had been copied in the transcript of the other case, it resulted in their not being copied into the one for this appeal.

The clerk of this court is, however, *ex officio* the clerk of the Superior Court; and both transcripts were filed in his office. It is proper, therefore, as the appeal was granted by the lower court, to treat this as having been a pending appeal in this court ever since the record was filed, if the jurisdiction did not belong to the Superior Court. The transcript was filed in the clerk's office within the proper time after the granting of the appeal below. On November 26, 1884, a motion was made in the Superior Court to transfer the case to this court, where the asylum suit was then pending. It embraced a request, which was entered upon the order-book, but not indorsed upon the record, to consider upon the motion the transcript in the asylum case. The motion was overruled, because the transcript

contained neither the judgment nor the petition upon which it had been rendered ; and the court was, therefore, of the opinion that it could not say that this court had jurisdiction. The other pleadings copied into the transcript did show, however, that it was an action involving the title to real estate, and that the Superior Court, therefore, had no jurisdiction of the appeal. Subsequently, a properly certified copy of the petition was filed as a part of the record, and the want of jurisdiction in the Superior Court was then apparent beyond question. The appellant then renewed his motion to transfer the case to this court, while the appellee, Cromie, moved to dismiss the appeal. The former order, refusing the transfer, was merely interlocutory, but the motion to dismiss prevailed. An appeal to this court by the Superior Court was thereafter refused; and the appellant then appeared in this court and moved to docket the appeal as a pending one in it. The motion was properly sustained.

The act creating the Superior Court provides that if an appeal be taken to it, when this court has jurisdiction, the case shall not be dismissed, but *shall* be transferred to this court. It was apparent that the Superior Court had no jurisdiction of the appeal. It had no power, therefore, in the case, save to relinquish the control of the record, to which it had no right, by an order of transfer. Any other order in it was *coram non judice*. In such a case we are loth to hold that, upon the refusal to transfer, a party must go to the unnecessary cost and trouble of dismissing his appeal and taking a new one.

Indeed, time may have barred his right to do so; and whether so or not, in a case where the appeal has been granted by the lower court, and the record discloses that the Superior Court has no jurisdiction, it is to be regarded as a pending appeal in this court, where it properly belongs, from the time the record is filed with the clerk of this court, who is also, by virtue of his office, the clerk of the Superior Court. This being so, it was proper to order it placed upon the docket of this court; and the entire transcript of both cases being now before us, under the rule of practice that where a part of a record is already on file in the appellate court, this much of it need not be again copied, but shall, if placed with the new record, be considered as a part of it, we will now pass to the consideration of the merits of the case.

It is apparent that the complaint of the committee is meritorious and well-founded. The undue haste attending the sale of the lunatic's property, and the hurried subsequent proceedings relating to it, readily create suspicion. The sacrifice of the property, and the helplessness of the unfortunate owner, demand that the sale shall be vacated, unless it be supported by entire fairness and good faith.

The appellee, Cromie, had loaned to the then committee a railroad bond, which he had pledged for his individual benefit. The appellee was clamoring for its return. The committee agreed with him, that if he would buy the lunatic's property, he (the committee) would use enough of the proceeds to redeem the bond and return it to the appellee. This was in effect the payment of a loan made by the appellee to Cochran.

It was an illegal and improper use of the lunatic's estate. It was at least a fraud in legal contemplation, if not in fact. The purchaser was the beneficiary of, and a party to it. Under such circumstances he cannot be allowed to retain the benefit of his thrifty bargain. It is the peculiar province of a court of equity to protect the innocent and helpless from such transactions; it delights to do so; and it would be recreant in duty to the highest degree if it neglected such a sacred trust. It appears that a portion of the money paid by the appellee to Cochran was, in fact, expended for the benefit of the lunatic, or in discharge of his liabilities. How much was so used does not certainly appear. It is shown, however, that some of it was paid to the asylum, and probably a portion of it in discharge of costs as directed by the judgment of sale. To the extent that the estate of the lunatic was thus benefited, the appellee should be allowed, with interest from the time of the payment of that much of the purchase money to the trustee. He should, however, account for the value of the use of the lot since he obtained possession of it; and if, upon the ascertainment of these matters by the lower court, through its commissioner or otherwise, as it may deem proper, the estate of the lunatic falls in debt to the appellee, a lien will be allowed him therefor upon the lot purchased by him, and its enforcement ordered in the event of non-payment.

Having entered into an unlawful combination with the trustee, Cochran, the appellee must look to him for any purchase money paid to him, and which was not, in fact, paid out for the benefit of the lunatic.

The sale of the lot to the appellee will be set aside, and the deed to him therefor canceled.

The judgment is reversed, and cause remanded to the lower court for further proceedings in conformity to this opinion.