CASE 68—ACTION BY FLORA EDMONDS AGAINST A. T. HUGHES FOR BREACH OF HIS CONTRACT TO MARRY HER.—MAY 14.

# Edmonds v. Hughes.

APPEAL FROM TODD CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

BREACH OF MARRIAGE PROMISE—DEFENSES—CONSIDERATION—ILLICIT INTERCOURSE—VOLUNTARY STERILITY—UNCHASTITY.

Held:   1. A promise of marriage in consideration of illicit sexual intercourse is void, and no recovery can be had for its breach.
2. That, subsequent to a marriage contract, the woman voluntarily submitted to an unnecessary surgical operation, whereby she became incapable of procreation, was a good defense to an action by her for breach of the promise.
3. Unchastity of woman when entering into marriage contract which fact is unknown to other party, is a good defense to action by her for breach of promise.

PERKINS & TRIMBLE, ATTORNEYS FOR APPELLANT.

This is a suit for damages on account of the breach by appellee of his contract to marry appellant.

The contract is admitted and it is pleaded in avoidance:

1. That the consideration therefor was the agreement of plaintiff to submit to sexual intercourse with the defendant.

2. That at the time of the contract the defendant believed the plaintiff to be a virtuous woman, but he thereafter learned that she was unchaste and without virtue.

3. That at the time of the contract she was in the full possession of her power to procreate, but thereafter submitted to an unnecessary surgical operation whereby her ovaries were removed and that she was thereby rendered unable to procreate.

She traversed the answer, and afterwards filed an amended petition alleging that she does not know whether she is able to bear children or not, nor whether her ovaries were removed, but says she submitted to a surgical operation skillfully done, upon the advice of her physician, that it was necessary to her health and life, and that after said operation and with full knowledge thereof, defendant, on many occasions agreed and promised to marry her, and that he had seduced her under a promise to marry her, all of which defendant controverted.

(1) We claim that the verdict of the jury is palpably against the evidence.

(2) That the instructions given by the court are erroneous, misleading and wholly unwarranted by the testimony. The instructions are as follows:

(a) "The court instructs the jury that if they believe from the evidence that the plaintiff and defendant entered into a contract to marry, and that subsequent thereto, plaintiff had her ovaries removed and thereby rendered barren, then in that event they should find for the defendant, unless they believe from the evidence that after plaintiff had said operation performed, defendant, with full knowledge of her physical condition and barrenness, if she was barren, again agreed to marry her or ratified and confirmed his original contract, if any, with plaintiff."

(b) "The court instructs the jury that, although they may believe from the evidence that defendant made an agreement or contract to marry plaintiff, if he did so, yet if they further believe from the evidence that he made such agreement, believing her to be a pure woman, and did not know she was unchaste, if she is unchaste, and that he afterwards learned it to be true that she is or was unchaste or had been guilty of adultery either before or subsequent to such agreement, then, in that event he had the right to refuse to carry out said agreement, and to refuse to marry her unless he renewed or ratified his promise, if any, after knowledge of said unchastity, if any."

(c) "The court instructs the jury that if they believe from the evidence that the defendant entered into an agreement to marry plaintiff, but that the consideration therefor was that she agree to carnal or sexual intercourse with him, then that

agreement is null and void and the jury should find for defendant."

We shall not attempt to refer to the evidence in detail, but submit that the verdict of the jury is palpably contrary to the evidence, and under the evidence and the errors of the court in giving the instructions, the plaintiff should have a reversal.

**S. WALTON FORGY, ATTORNEY FOR APPELLEE.**

The appellant and appellee are both negroes and reside in Elkton and are well known. The appellant is a disreputable woman of the town as the proof clearly showed and convinced the jury that she was unchaste and without virtue. Eight witnesses testified to her unchastity and bad character, and she was unable to produce one to contradict them.

We contend that the proof fully sustained the allegations of the defendant's answer; that the instructions given by the court present the law applicable to the case, under the issues made, and that the finding of the jury is fully warranted by the evidence and should be affirmed.

### AUTHORITIES CITED.

1. If the defendant agreed to marry the plaintiff not knowing that she was unchaste and he afterwards learned that she was unchaste, he had the right to abandon the agreement. Am. Ency. Law, 2d ed., vol. 4, p. 892; 63 Am. Dec., 543, and authorities cited.

2. A promise to marry based upon an agreement to submit to sexual intercourse is void. Am. Ency Law. 2d ed., vol. 4, p. 889, note 3 and authorities cited; Id., p. 890; Hanks v. Naglee, 35 Am. Rep., 67; 63 Am. Dec., 536, note 5.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

The appellee, Flora Edmonds, instituted this action in the Todd circuit court to recover damages of the appellee for a breach of his contract to marry her. The facts stated in the petition constitute a valid cause of action. Appellee, in his answer, admits his promise to marry appellant, as alleged in the petition, but pleads as a defense: First. That the consideration for the contract was the agreement by appellant to then and there have illicit intercourse with him, and that his promise was made upon no

other consideration. Second. That at the time the promise was made by him he believed the appellant to be a virtuous woman; that he did not at that time or prior thereto know that she was, or had been, an immoral or unchaste woman, or that she had been guilty of lewd or lascivious conduct with other men, but since his promise he has learned, and now charges it to be true, that she was prior thereto, then, and now unchaste, and that she has been guilty of adultery with other men. Third. That at the time he promised to marry her she was a woman in full possession of the power of procreation, and was able to bear children; that after the promise was made she voluntarily submitted to and permitted an unnecessary surgical operation to be performed upon her body, by which she was rendered unable to procreate or bear children, and will forever remain so. Without examining the pleadings minutely, it is sufficient to say that the issues were made upon these three defenses of appellee.

In Beach on the Modern Law of Contracts, section 1553, it is said: "A contract made in consideration of future illicit sexual intercourse is void, and the woman can not recover under such contract, although it has been performed on her part." In Parsons on Contracts, star page 66, the rule is thus stated: "But it would seem on general principles to be a good defense [to an action for breach of promise to marry] that the promise was made on condition that the plaintiff would commit fornication with the defendant; for such a promise might be void as founded upon an illegal consideration." In Baldy v. Stratton, 11 Pa., 316, the court say: "A promise to marry on condition of illicit intercourse is illegal, and a consideration that will not support a promise. A promise to marry on an illegal consideration is virtually void." In the case of Judy v. Sterrett, 52 Ill.

Edmonds v. Hughes.

App., 265, it was held that "a promise of marriage in consideration of illicit sexual intercourse is void." In the case of Hanks v. Naglee, 54 Cal., 52, 35 Am. Rep., 67, it is said: "Upon well-settled principles the plaintiff should not have recovered upon a contract of this character [to marry], as, being a contract for illicit cohabitation, it is tainted with immorality. . . . It was confessedly not a case in which the defendant, taking advantage of the trust and confidence which may be fairly supposed to exist between parties who have in apparent good faith made mutual promises of marriage, has abused the confidence of the female, and induced her to yield him favors which she might have otherwise withheld. The agreement to yield her person to him was one appearing to have been deliberately made in advance, and when there had been no promise of marriage." In Addison on Contracts, vol. 2, star pages 838, 839, it is said:  "If, subsequent to the making of the contract to marry, one of the parties, being bodily diseased, becomes unfit for the performance of the most important duty of marriage, the party so unfit is not thereby entitled to treat the contract as dissolved, the other party still desiring its performance; but the latter may break off the engagement, for if a man, by disease, accident or mutilation, becomes impotent, he can never maintain an action against a lady for refusing to marry him." In the case of Berry v. Bakeman, 44 Me., 164, it is said: "Proof that the plaintiff is a loose and immodest woman, and that the defendant broke his promise on that account, is a bar to the action, unless it should also appear that the defendant was aware of this when he made the promise, in which case it is no defense." In Addison on Contracts, vol. 2, star pages 838, 839, it is said: "If the woman, at the time of her betrothment, was of loose and immodest character, and this was unknown at the time to the man who prom-

ised to marry her, the latter is entitled as soon as he discovers her real character to break off the engagement. General reputation of want of chastity must be established in such actions; or, if particular instances of misconduct are relied upon, they must be fully proved. If the circumstances, whatever they may be, were known to the other contracting party, there is then no fraud or deceit in the matter, and he has no ground for refusing to complete his engagement." In Parsons on Contracts, vol. 2, star page 65, in enumerating the defenses to action of breach of promise to marry, it is said: "So the bad character of the plaintiff, or his or her lascivious conduct. The cases generally exhibit this defense where the woman is plaintiff; but it ought with equal justice, and on moral as well as on public grounds, to be permitted to the woman when she is defendant. It was so held in the case of Braddeley v. Mortlock, and undoubtedly would be so held in this country. If the defense be general bad character, evidence of reputation is receivable; for, says Lord Kenyon, 'character is the only point in issue; public opinion, founded on the conduct of the party, is a fair subject of inquiry.' If the defense rests on specific allegations of misconduct, these must be strictly proved; and if the defendant knew the general bad character, or the specific misconduct, before making the promise, they constitute no defense."

We conclude, then, from these authorities, that each of the three defenses set up by the appellee in his answer, if true, constitute a valid bar to the cause of action contained in the petition. These principles of law were all fairly presented to the jury in the instructions, which after a careful examination, we think were as liberal to the appellant's interest as she was entitled, and that the evidence justified the verdict rendered by the jury.

Wherefore the judgment is affirmed.