## Barrett v. Vander-Muelen.

(Decided March 27, 1936.)

442

HITE H. HUFFAKER and JOHN R. MOREMAN for appellant.
HARGADON & McNALLY and J. W. CLEMENTS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

This appeal is from a judgment for $15,000 on account of a breach of promise to marry.

A question of practice preliminary to the consideration of the merits arises from motions to strike the bill of exceptions and the transcript of evidence. Pending a decision upon the defendant's motion for a new

trial, the evidence was transcribed and copies put in the hands of the attorneys. On January 26, 1935, the motion was overruled and the defendant given 60 days in which to file the bill of exceptions. No day certain was designated. On January 31, an appeal was prayed and granted, and a supersedeas bond executed. On March 6, the bill of exceptions was tendered, examined, approved, and filed.

The supplemental record discloses that pending the filing of the bill of evidence the attorneys for the plaintiff took up with the official stenographer a number of apparent or claimed errors, which they desired corrected. Upon checking with the shorthand notes, the stenographer found that the corrections should be made, and took up the matter with counsel for the defendant. While these negotiations were going on, and without the corrections having been made, counsel for the defendant obtained the approval and filing of the record. This was without notice to the other side.

In April, after the expiration of the 60 days, counsel for plaintiff learned from the reporter that the transcript had been filed without being corrected. On August 10, after notice, the plaintiff moved the court to strike the bill of exceptions for the reasons stated and because she had no notice of the motion to file it; hence had had no opportunity to object. By agreement of counsel, the hearing on this matter was passed to August 24. During this interval, the record was filed in the Court of Appeals by the defendant. The trial court being of opinion it had lost jurisdiction on that account overruled the motion.

Section 334 of the Civil Code of Practice provides that:

"Time may be given to prepare a bill of exceptions, but not beyond a day in the succeeding term, to be fixed by the court."

It has been held in a number of opinions that a day certain should be fixed in the order. Although the court may extend the time on or before that day, strict construction and application have been required in the interest of fairness, particularly that the adverse party might be given an opportunity to examine and object to the bill if he desires, and that no sort of advantage may

be taken of him or of the court. Smith v. Blakeman, 8 Bush (71 Ky.) 476, 479; Forsythe v. Huey, 74 S. W. 1088, 25 Ky. Law Rep. 147; Graves' Committee v. Lyons, 166 Ky. 446, 179 S. W. 413. While the authority of the trial court to permit the filing of the bill in courts of continuous session during the 60 days following is not questioned (section 1016, Kentucky Statutes), the practice in the case at bar has developed the wisdom of setting a day certain. Otherwise a condition exists which is unnecessarily harassing and dangerous to the rights of the opposing party.

Under the order of court, the defendant had the right to tender the bill at any time during the designated period. On the other hand, during the same period after tender the plaintiff had the right to question the correctness of the bill or move that it be stricken. If she had been aggrieved at the ruling of the court on her motion a bystander's bill (which may have been the transcript as plaintiff claimed it should be) could have been filed. Section 337, Civil Code of Practice. The court had control of the case during the entire 60 days. Section 988, Kentucky Statutes. Granting of an appeal does not of itself divest the court of jurisdiction. The Court of Appeals does not acquire jurisdiction until the appeal is perfected in the manner provided by statute. 3 C. J. 1252; Stone v. Cromie, 87 Ky. 173, 7 S. W. 920, 10 Ky. Law Rep. 19; Ohio River Contract Co. v. Gordon, Judge, 172 Ky. 404, 189 S. W. 451.

Counsel for plaintiff justify their failure to move within the period to correct or strike the bill by the assurance they had that the corrections would be made before it was filed. It is not necessary for us to consider what might have been done had the appeal been perfected before the expiration of 60 days, for that was not done.

The further point is pressed upon us that since there was no notice of a purpose to tender the bill, its filing is a nullity. The Code does not require that notice be given of such tender. The record states, however, that the examination, approval, and filing were on the defendant's motion. But such action is not required to be done on a motion. The tender is made in conformity with and under the privilege granted by order previously made. The approval and filing follow by opera-

tion of provisions of the Civil Code of Practice, section 334. Since no motion was required, it would seem that the rules of the Jefferson circuit court requiring actual or constructive notice of all motions are not applicable.

The trial court's ruling was proper. The bill was duly approved and filed in accordance with the provisions of the Code and the order of the court, and the motion made in this court is therefore overruled.

The plaintiff pleaded and proved a mutual promise to marry was made in October, 1930, and after a series of postponements the engagement was broken by the defendant in January or in June, 1933. The defendant denied both in pleading and proof ever having promised to marry the plaintiff. He also alleged that both before and after the time stated in the petition that the engagement was entered into, the plaintiff was and is a woman of bad moral character and not virtuous, which was unknown to the defendant at all times, and

> "the defendant especially pleads and relies upon the bad character and morals and lack of virtue of the plaintiff in bar"

of her claim and right of recovery. That was traversed. It is admitted in pleading and proof that the parties had engaged in repeated sexual relations. Testimony was admitted which tended to prove immorality and misconduct on the part of the plaintiff with other men *after* the date of the alleged contract to marry. The defendant testified that he was ignorant of all of that prior to the institution of this suit. It is not necessary to notice the pleading or evidence further.

However, the court excluded evidence of particular occasions of immorality on the part of the plaintiff with other men *prior* to the time she testified the engagement to marry was entered into. The appellant maintains this was error. The appellee's responsive argument is that since the defendant was ignorant of the claimed meretricious conduct, her incontinence or unchastity could not and did not cause the breach; hence the evidence was irrelevant and incompetent. 9 C. J. 337; Edmonds v. Hughes, 115 Ky. 561, 74 S. W. 283, 24 Ky. Law Rep. 2467; Watson v. Bean, 208 Ky. 295, 270 S. W. 801. We think appellee misconstrues the rule.

It is the legal as well as moral duty of persons

who have plighted mutual vows to marry to preserve themselves during betrothal pure and blameless; and if a betrothed woman prostitutes her person to another man, it will bar her action for breach of the marriage contract. Contracts to marry, like contracts of marriage, are peculiar and distinguishable from ordinary contracts, since they establish a relation of extreme confidence between the parties and alter their status. The presumption of virtue always exists. If upon the strength of that presumption and in innocence of any misconduct one enters into an agreement to marry, and it develops that the other contracting party was not of that purity of virtue so impliedly represented and relied upon, there is fraud which vitiates the contract and the right of renunciation at any time arises. If such misconduct after marriage is sufficient in law to justify a divorce, a fortiori, it is a sufficient justification for not marrying. So it is that the guilt of one party and the innocence of the other constitutes for the latter a complete defense to an action for breach of contract; but conduct merely immodest, falling short of actual unchastity, does not. Edmonds v. Hughes, supra; Watson v. Bean, supra; 9 C. J. 337; 4 R. C. L. 168; Bishop, Marriage, etc., vol 1, sec. 217; Sheahan v. Barry, 27 Mich. 217; Berry v. Bakeman, 44 Me. 164; Foster v. Hanchett, 68 Vt. 319, 35 A. 316, 54 Am. St. Rep. 886; Garmong v. Henderson, 114 Me. 75, 95 A. 409. And this is so even if the defendant did not know of plaintiff's unchastity until after the action is brought. Colburn v. Marble, 196 Mass. 376, 82 N. E. 28, 124 Am. St. Rep. 564. The law is thus stated in Schouler, Marriage, etc., section 1293:

"A man, ignorant of a woman's immoral character at the time of the engagement, can break off the match upon finding it out, or if she prove unchaste subsequently. This presupposes that he is not at fault; for if he has seduced her, or had carnal intercourse with her, or even condoned her fornication with others, he cannot set up her misconduct in defense, but mere immodest and indecent conduct of the woman before engagement is not a defense."

In this case the plaintiff's claims were that she was virtuous and the defendant had promised to marry her and refused, while the defendant's contentions were

that she was unchaste and there was no promise. With these conflicting propositions, the evidence of unchastity of the one both before and after the engagement, and of innocence of the other was competent. Hence the rejection of the evidence was prejudicial error.

The second instruction given was as follows:

"If you believe from the evidence that the defendant, Thomas L. Barrett, agreed and promised to marry the plaintiff, Bessie Vander-Meulen, and she accepted said proposal, as set out in instruction No. 1, and if you further believe from the evidence that the plaintiff, Bessie Vander-Meulen, had been guilty of such lewd and lascivious conduct as proved her to be unchaste, then you will consider such fact, if such is the fact, in mitigation of the damages, if any, that you will award to the plaintiff under instruction No. 3."

Evidence of unchastity or of bad reputation for virtue both before and after the engagement is competent for the purpose of reducing the recovery or in mitigation of damages where the defendant had knowledge of it. 4 R. C. L. 173. Under the respective claims of the parties, the defendant's being that plaintiff was guilty and he ignorant, such an instruction was improper.

The defendant offered the following instruction, which was refused:

"If you believe from the evidence that before or after the plaintiff claims to have become engaged to marry the defendant, that said plaintiff was a lewd, unvirtuous, or immoral woman, and this fact was unknown to the defendant, then the law is for the defendant and you shall so find, even though you may believe that there was a contract of marriage between the plaintiff and the defendant."

This instruction was substantially correct, and it, or one like it, should have been given. Strictly speaking, there was no "contract of marriage," but a claimed contract to marry.

It is not necessary and we do not pass upon any other question raised.

Wherefore, the judgment is reversed.