Chief Justice Marshall
delivered the opinion of the Court.
Caroline Cornwell, a widow, brought this action for an alleged breach of promise of marriage, and obtained a verdict and judgment, against William Burnham, for $500, and his motion for a new trial having been overruled, he brings the judgment to this court for revision.
There was no direct evidence of an engagement or of mutual promise between the parties to marry each other, nor of a promise by the defendant to marry the plaintiff, nor of any offer on the part of the plaintiff to marry the defendant, nor of any request by her that he should marry her. There being no evidence of any engagement or promise to marry there was of course no evidence of there being any time or plaee fixed on between them for the marriage to take place; and although it be proved that the plaintiff was ready and willing to marry the defendant, this imposed on him no legal obligation to marry her, nor any liability for not marrying her. Even if it appeared that her inclination to marry him was induced by his attentions to her, there must still be a promise to marry on his part, to entitle her to recover damages for his failure, however reprehensible, to meet her just expectations founded upon his own conduct. Nor is it sufficient that there should be a promise on the part of the male — there must be mutual promises — that is, a mutual engagement to marry. Where the promise or offer of the male has been, proved, it has been held that the mutuality of the promise or engagement may be proved by showing that the female demeaned herself as if she concurred in and approved of his promise or offer. (Chitty on Contracts, 537, and the cases there cited; 3 Salk., 16, 64; 3 Car. & P., 553.) But without proof of an *287 offer or promise on his part, even her declaration to a third person, in his absence, that she was willing to marry him, would be wholly incompetent to prove a promise on his part. Such evidence is not admissible to prove his promise.
1. In actions for breach of marriage contract, it is not 1 n d is pen si ble that there be direct evidence of an express promise to marry. (Ghitty on Con., 536 ) It may be evidenced by the unequivocal conduct of the parties, and by a general, yet different and reciprocal under standing between the friends and relations, evinced and corroborated by their actions that a marriage was to take place. (Wightman vs. Coates, 15 Mass. R., 1; 5 Shaw & Weston 144; 2 Dow & Clark, 282.)
2. It is not sufficient that there shall have been a course of attentions on the part of the male evincing affection, but a jury must be satisfied that there was a serious promise or offer of marriage accepted as such.
It is true that to establish a promise, even on the part of the male, it is not necessity that there should be direct evidence of an express promise in totidem verbis. (Ckitty on Contracts, 536.) The author referred to says it may be evidenced by the unequivocal conduct of the parties, and by a general, yet definite and reciprocal understanding between them, their friends and relations, evidenced and corroborated by their actions, that a marriage was to take place.
In the case of Wightman vs. Coates, 15 Mass. Reports, 1, it is said by C. J. Parker, in an able and interesting opinion on the subject, that a mutual engagement “may be proved by those circumstances which usually accompany such a connection ” But it is evident from the context that in making this remark he had particularly in view the proof of a promise on the part of a female, and in that case the evidence of a promise by the male was of a decisive nature. In a note to the same case (page 5,) is to be found an extract from the case of Honeyman vs. Campbell, 5 Shaw & Weston, 144; 2 Dow. & Clark, 282, in which the question as to the proof by which a promise of this kind may be established, is satisfactorily scrutinized by the Lord Chancellor, who, among other things, says, “If I were at nisi prius, trying it with a jury, I should inform them that they must be satisfied that there was a promise — a serious promise — intended as such by the person making it, and accepted as such by the person to whom it was made.” And this, as it seems to us, is the only safe ground on which to place the circumstantial proof of such a promise. It is not sufficient that there has been, on the part of the male, a courtship — that is, a course of particular attentions evidencing affection. But the conduct and actions of the parties, and the attend *288 ant circumstances, must be sucb as to satisfy the jury that there was a serious promise or offer of marriage accepted as such.
3. There must be an offer of performance of the marriage contract before any action can be maintained for a breach of promise to marry. (Fible vs. Gaplinger, 13 B. Monroe, 464; Burks vs. Skain, 3 Bibb-, 341.)
4. A jury is not authorized to infer a promise of marriage from visits, and such respects on the part of the male as are usual in courtships; nor that a promise was made within a year before suit was brought from the fact that such visits continued to a period within a year from that time; and it was en'01- for the court so to 6*V to the jury.
*288 Mutual promises to marry may doubtless be inferred from the visits of the male to the female, and his declarations that he had promised to marry her.— (Southard vs. Rexford, 6 Cowan, 254.) But expressions to third persons of an intention to marry another, not in the presence of the latter, do not amount to a promise to marry. (Coleman vs. Coltingham, 8 Car. & P., 75,) though with other circumstances they tend to prove one.
There being no proof in this case of any offer or request at any time on the part of the plaintiff to the defendant that they should be married, and none from which such offer or request could be legitimately inferred by the jury, there was a fatal defect in the plaintiff’s case even if a promise to marry, either generally or in reasonable time or when requested, had been proved. (Fible vs. Caplinger, 13 B. Mon., 464; Burks vs. Shain, 2 Bibb, 341.) And the motion for a non-suit should on that ground have prevailed. And as this proof was not afterwards supplied, there must be a reversal on that ground. But as the case must go back for a new trial, it is necessary to notice the instructions given, or at least the principles on which they seem to be based.
The first instruction authorizes the jury to infer from the visits of the defendant to the plaintiff, and from such respects on his part as are usual in courtships or in making’matrimonial engagements, a promise of marriage on his part, &c. The second authorizes them to infer that such a promise to marry was made within one year, (the limitation to the action by law, and on which the defendant relied,) if such attentions as are usual on the part of gentlemen offering matrimony to ladies continued up to within one year. The first instruction makes courtship alone evidence of a promise to marry, and the second is apparently based upon the first; neither of *289 them declares either that there must have been a promise seriously made or accepted, or that the jury must be satisfied that such was the fact. The fourth instruction is based upon the hypothesis that there A t n being a promise on the part of the defendant withm a year, &c., to marry the plaintiff, which might of-course be inferred as authorized by the first and second instructions, if there was also an offer on the part of the plaintiff to consummate the marriage, of which latter fact there was no evidence, they should find for the plaintiff, unless, &c. This instruction is infected with the error of the first and second, and is also erroneous in assuming that there was evidence of an offer by the plaintiff to consummate the marriage. The fourth instruction is also subject to the objection, that it refers to the jury, and as a ground of enhancing the damages, the question of the defendant having, by reason of his promise to marry the plaintiff, seduced her, of which fact there is no evidence, and which not being averred, could not be proved. (2 Bibb, 343.) The fifth and last instructions are subject to the same objections as the third and fourth, and are more objectionable than either.
Wherefore, the judgment is reversed, and the cause remanded for a new trial in conformity with the principles of this opinion.