## Elmore v. Haddix.

(Decided May 15, 1934.)

SHUMATE & SHUMATE and HUGH RIDDELL for appellant.
E. E. RICE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appeal is from a $1,700 judgment for breach of promise to marry. The appellee, Lily Mae Haddix, a married woman, then only sixteen years old, came from another county to the home of her sister in Irvine in the latter part of 1931. Shortly thereafter she became acquainted with the appellant, J. Floyd Elmore, a widower about 54 years of age. A courtship and love affair immediately started. A number of letters passed between them, but we pass over the billets doux and other details of their licit and illicit love affairs as being unimportant to the decision, although interesting to the inquisitive and as well to those rare souls who claim to have no itch of curiosity.

The plaintiff related that after begetting her with child in March, 1932, the defendant ceased his attentions on that account, while the defendant stated that at a later time when he found out that the young woman was not divorced he broke off relations with her and never at any time promised to marry her. On the contrary, she says he was at all times fully acquainted with her marriage status and that he promised to pay the costs of her divorce proceeding. He also denies the paternity of the child which was born in December. A divorce was awarded plaintiff, so she testifies, in July, but on account of Elmore's refusal to pay the costs and her inability to do so sooner, the decree was not entered until September 2, 1932.

By her guardian, a suit was filed against Elmore on September 19, 1932, charging the breach of a mutual agreement to marry made on or about January 14, 1932. That petition was dismissed after the commencement of the present suit, apparently because of the realization that one who at the time has a husband or wife cannot enter into a valid contract to marry even though it be conditioned upon a divorce being granted in the meantime. Webb v. Forman, 8 Ky. Op. 697; 9 C. J. 324. The time of filing and the subject-matter of this abandoned suit became of some importance as inconsistent with the plaintiff's subsequent claims.

The present suit is founded upon a claimed agreement, alleged in the petition to have been made on or about July 15, 1932, that they would be married as soon as the defendant's daughter was married, which promise it is claimed was renewed by the defendant upon several occasions, both before and after the plaintiff was divorced. The case was submitted to the jury, and properly so, only on the issue of there being a promise to marry after September 2, 1932, the day the divorce decree was entered.

It is unquestionably true that a promise made while one of the parties is married, and known to have that status, is against the policy of the law and therefore void, but where there is a renewal of the promise when there is no such obstacle, either in law or in good morals, to prevent the marriage, such promise may be relied upon in an action for its breach. Smith v. McPherson, 176 Cal. 144, 167 P. 875, L. R. A. 1918B, 66; Vnuk v. Patterson, 118 Or. 602, 247 P. 766, 47 A. L. R. 394; Schouler on Marriage, etc., sec. 1287; 4 R. C. L. 145; 9 C. J. 325.

There is no express evidence of a formal proposal and acceptance, usually portrayed in romantic stories, but the plaintiff did testify to several promises made by the defendant. When she established an agreement after the divorce, the promises made theretofore became competent in corroboration, and the court should have so admonished the jury. The evidence was clearly sufficient to show a promise after the divorce, which was the issue. 9 C. J. 325. However, they were always coupled with a postponement of the consummation. Nor is there any express acceptance of his promise or of a reciprocal promise on the part of the plaintiff, although the evidence and circumstances are amply sufficient to establish by inference the necessary mutuality of the obligation, which is as essential to a marriage contract as any other. Allard v. Smith, 59 Ky. (2 Metc.) 297; 9 C. J. 326. There is no evidence by the plaintiff that the defendant ever actually repudiated his promise or denied his agreement unless his conduct be regarded as such. As stated, he denies there was ever an engagement. However, an important and necessary element to the successful maintenance of the action is claimed by the appellant to be missing, that is, a failure by the plaintiff to allege and prove that she tendered herself for

marriage, and thus bring to a definite close the continuing promises and postponements.

Following the English authorities, it was early held by this court in Burks v. Shain, 5 Ky. (2 Bibb) 341, 5 Am. Dec. 616, that where no time and place for the performance of the marriage ceremony is fixed by the parties, it is understood that it will be performed in a convenient and reasonable time and may be performed anywhere. And in such a case, to entitle either party to maintain an action for breach of the promise, it is indispensable that there should have been an offer on the part of the other to perform the contract or consummate the marriage, and that it is not equivalent nor sufficient that the plaintiff should have been willing and ready to do so. In Fible v. Caplinger, 52 Ky. (13 B. Mon.) 464, the subject is ably and interestingly treated. Some of the fundamental constituents of a contract to marry and the essential facts to be charged and established in order to maintain an action for a breach are set forth. The material part of the law declared in that opinion is that such contracts, like others where the undertakings of the parties are to be performed at the same time and are necessarily dependent upon concurrent performance, cannot, of course, be carried out except by mutual consent, good faith, and contemporaneous action of both the contracting parties; hence, if no time and place were agreed upon for the solemnization of the marriage, neither party can be in default, nor has either violated their pledged faith or broken their agreement until the other has proposed and made the offer to fix the time and place and to fulfill the engagement. Such agreements, it is said, come under the rule which governs contracts to be performed upon special demand as to where one covenants to perform certain things which in their nature cannot be done unless the other party shall first do certain other things. It was held that there must have been a request by the plaintiff that the defendant perform his engagement, and unless he then failed or refused to comply, he has not committed a breach and cannot be held responsible in damages. This rule was previously stated in Martin v. Patton, 11 Ky. (1 Litt.) 233, and is reiterated in Burnham v. Cornwell, 55 Ky. (16 B. Mon.) 284, 63 Am. Dec. 529, and in Grubbs v. Pence, 73 S. W. 785, 24 Ky. Law Rep. 1283, with the suggestion that a request or demand by the

more anxious one is equivalent to an offer on his or her part to perform the agreement.

Of course, where the defendant has incapacitated himself from fulfillment by marrying another, such offer or request would be futile and unnecessary. Schouler on Marriage, etc., sec. 1289; note, L. R. A. 1918B, 68.

The allegations of the petition respecting the offer by the plaintiff to perform the agreement or a request by her that the defendant should definitely consummate the engagement are not very explicit; but in view of the judgment, with the consequent relaxation of the rule of strict construction, it may be regarded as sufficient. Likewise, the letter of her evidence on this point as it related to the period following her divorce is not very satisfactory. There was no specific or express offer or request or for a definite show-down, but there were pathetic general appeals that the defendant should fulfill his promise. The circumstances showed anxiousness and a continuous readiness on her part. In 9 C. J. 336, it is written:

"A formal offer in words is not necessary to constitute a tender of, and request for, performance by the woman, but any expression on her part, in the presence of the man, of readiness to be married is sufficient. A general request for fulfillment of the promise is sufficient, although there is no request to fix a day and a refusal thereof."

And in 9 C. J. 362, it is further said:

"Evidence of conduct of defendant tending to show that throughout the whole period of the existence of his promise he made unfounded excuses and raised pretended barriers to avoid its consummation is sufficient to negative the good faith of his verbal professions of readiness to carry out the contract."

Giving allowance for a natural modesty of the sex in such matters, and having regard for the circumstances and the condition of the parties, and under the influence of the less rigid rule in other jurisdictions than that laid down in our early opinions, holding as the other courts do that known readiness to marry on the part of the woman is enough, we have concluded that the evidence was sufficient upon this point to submit the

question to the jury. See, also, Schouler on Marriage,. etc., sec. 1289. The defendant's denials made the issue..

But the instructions were erroneous in predicating· the right of the plaintiff to recover upon a mere willingness on her part to marry the defendant if he promised. to marry her. The instructions should embody the idea of a mutual agreement, and in the light of the plaintiff's. version of a continuing postponement of the consumma-· tion by the defendant, the jury should be permitted to· say whether she brought herself within the rules herein. outlined.

The judgment is reversed.

The whole court sitting.