Ranay Stout **JACKSON**, Plaintiff and Appellee,

v.

Scott William **BROWN**, Defendant and Appellant.

No. 940403.

Supreme Court of Utah.

Oct. 16, 1995.

Gregory B. Hadley, Provo, for plaintiff.

Richard G. Hackwell, Salt Lake City, for defendant.

DURHAM, Justice:

We granted an interlocutory appeal from a Third District Court order denying defendant's motion to dismiss plaintiff's causes of action for breach of promise to marry and intentional infliction of emotional distress as obsolete and nonjusticiable.

In May 1993, the parties in this action began a social relationship. Not quite three months later, on July 24, 1993, defendant Scott Brown proposed marriage to plaintiff Ranay Jackson. Jackson accepted. A wedding was planned for November 11, 1993, at 10 a.m. On November 4, 1993, the parties obtained a marriage license in Salt Lake County. During the early morning of November 11, Brown came to Jackson's home and told her he could not go through with the marriage. However, he did not reveal, and Jackson did not learn until later, that at all times during his relationship with Jackson, he was already married.

After Brown's decision to cancel the wedding and upon learning of his marriage, Jackson filed this action seeking $1,000,000 in actual and punitive damages based upon theories of breach of promise to marry and intentional infliction of emotional distress. Brown moved to dismiss the claims as obsolete and anomalous. The trial court denied his motion because this court has previously recognized breach of promise to marry as a valid cause of action. *See, e.g., Wilsted v. Nation,* 99 Utah 76, 103 P.2d 282 (1940). This court granted Brown's petition for an interlocutory appeal.

Whether to grant or deny a motion to dismiss is a legal decision. Therefore, we review the trial court's decision for correctness, granting no deference to that decision. *Erickson v. Schenkers Int'l Forwarders, Inc.,* 882 P.2d 1147, 1148 (Utah 1994).

## BREACH OF PROMISE TO MARRY

The first issue before us is whether the common law action for breach of promise to marry has any legal significance today. This action first arose over four hundred years ago to provide a remedy for persons who had spent money in reliance on another's promise of marriage which was later recanted. *See, e.g., Appilgarth v. Sergeantson,* 1 Cal. Ch. XLI (1438); 1 Homer H. Clark, Jr., *The Law of Domestic Relations* § 1 (1987). It is generally agreed that at that time, the predominant view of marriage as an economic transaction was the rationale for the cause of action; it did not arise as a remedy for damaged sentiment. *Id.* However, as Professor Clark has further noted, "By the twentieth century ... American marriage customs had so changed as to be totally unlike those prevailing when breach of promise first became actionable." *Id.* Therefore, we must decide whether this ac-

tion has any place in our current jurisprudence.

When this court finds a common law cause of action to be anomalous, unworkable, or contrary to public policy, it will abolish the action. *See, e.g., Norton v. Macfarlane,* 818 P.2d 8, 16–17 (Utah 1991) (abolishing action for criminal conversation); *Hackford v. Utah Power & Light Co.,* 740 P.2d 1281, 1286 (Utah 1987) (abolishing action for loss of consortium). Therefore, if breach of promise to marry is found to be unworkable or contrary to public policy, this court has the power to abolish the action.

It is certainly the policy of the state to uphold marriage vows. However, we see no benefit in discouraging or penalizing persons who realize, *before* making these vows, that for whatever reason, they are unprepared to take such an important step. Plaintiff in this case concedes that if we were to uphold the action, any time an engaged party were to cancel wedding plans for any reason, the other party would have a prima facie case for breach of promise to marry. Such an action would be highly susceptible to abuse by persons whose feelings are damaged by a former fiancee's decision to cancel a wedding. In *Norton,* we held that actions so manipulable and vulnerable to this type of abuse are "counterproductive" to the good of the state. *Norton,* 818 P.2d at 17. An action which would accrue any time a person, for whatever reason, cancels or indefinitely postpones wedding plans is contrary to the public policy of this state. Not only would such an action be readily amenable to abuse, but it would discourage individuals with legitimate doubts or concerns about a planned wedding from cancelling the event. Encouraging people to marry out of fear of a lawsuit furthers no legitimate purpose and would undoubtedly cause many problems.

We also note that the alleged injuries Jackson seeks to remedy through this action are all emotional rather than economic in nature. The losses complained of are pride, love, and esteem. Brown argues that an action developed to remedy the economic losses resulting from the withdrawal of a marriage promise cannot be used in this day and age to redress the emotional losses that follow. We agree. Although emotional damages are often actionable, breach of promise to marry is not the proper vehicle for that purpose.

In reaching this determination, we note first that no injury to a plaintiff, upon proper showing, goes unremedied. As noted above, any economic losses suffered because of Jackson's reasonable reliance upon Brown's promise to marry her (such as normal expenses attendant to a wedding) may be recoverable under a theory of reasonable reliance or breach of contract. Second, and as discussed more fully below, if a proper case is made out, emotional damages resulting from Brown's actions may be remedied by an action for intentional infliction of emotional distress. Accordingly, no fundamental remedy is lost to this or any other plaintiff by our decision that breach of a promise to marry no longer has any legal significance. We therefore hold that no independent action may be maintained in this jurisdiction that is based upon breach of a promise to marry. Although the trial court correctly recognized that the action had been upheld in this jurisdiction over fifty years ago, in light of modern customs and jurisprudence we now abolish the cause of action in this state.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Brown also appeals from the trial court's denial of his motion to dismiss Jackson's claim of intentional infliction of emotional distress. We affirm.

The tort of intentional infliction of emotional distress was established in this jurisdiction over thirty years ago. In *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344 (1961), this court enumerated the elements necessary for a prima facie case. There, this court stated that a plaintiff is entitled to damages

where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the gener-

**688**

ally accepted standards of decency and morality.

*Id.,* 358 P.2d at 347. Brown argues that because Jackson's claim of intentional infliction of emotional distress is based upon the same alleged acts as her claim of breach of promise to marry, "as one fails, so must the other." We disagree.

 It is true, as Brown argues, that the mere decision to withdraw from a planned marriage is an insufficient basis for this cause of action. It would not meet the "purpose" or the "outrageous and intolerable" tests identified in *Samms.* As stated above, an earnest decision by one party in a wedding engagement to cancel marriage plans should not be discouraged, let alone legally penalized. Although such a decision may frequently cause some amount of pain for all parties involved, it is not the kind of pain which is susceptible to remedy in the courts. There is not necessarily any legal wrong in it. However, in the case before us today, there are allegations and some evidence that Brown may have acted with the intention of deceiving Jackson and with the knowledge that his actions would cause emotional distress. For instance, Brown has conceded that during the period in question, he was already married; at no time during his relationship with Jackson was he able, legally, to marry her. Yet he proposed, scheduled a ceremony, acquired a license, and apparently offered every appearance of going through with the wedding. He withdrew his promise only hours before the time scheduled for the ceremony. These actions may very well be "considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Id.* Whether such is the case, however, is a question for the trier of fact. Therefore, we hold that the trial court correctly denied Brown's motion to dismiss Jackson's claim of intentional infliction of emotional distress.

HOWE, J., concurs in DURHAM, J., opinion.

STEWART, Associate Chief Justice, concurring in part in the result:

I concur in most of the majority opinion but cannot concur in the dictum that "any economic losses suffered because of Jackson's reasonable reliance on Brown's promise to marry her (such as normal expenses attendant to a wedding) may be recoverable under a theory of reasonable reliance or breach of contract." That issue should be addressed, in my view, only when it is properly presented to this Court and properly argued by the parties.

I concur in the remainder of the opinion.

ZIMMERMAN, C.J., and RUSSON, J., concur in STEWART, A.C.J., opinion.