Alvin D. GILBERT, Appellant,

v.

Suzanne BARKES, Appellee.

No. 97–SC–463–DG.

Supreme Court of Kentucky.

March 25, 1999.

Edmund P. Karem, Scott E. Karem, Louisville, for Appellant.

Katie Marie Brophy, Louisville, for Appellee.

STEPHENS, Justice.

The issue we decide on this appeal is whether the claim of breach of promise to marry is still a viable legal cause of action in Kentucky. Recently, the Jefferson Circuit Court granted summary judgment to appellant dismissing a claim brought under this cause of action. Thereafter, the Kentucky Court of Appeals overruled the circuit court and reinstated the claim.

In reversing the Jefferson Circuit Court, the appellate panel expressed its disagreement with our previous decisions on this issue. However, the Court of Appeals correctly noted that under SCR 1.030(8)(a) and *Special Fund v. Francis,* Ky., 708 S.W.2d 641, 642 (1986), it lacked the authority to overrule a precedent established by this Court.

The facts which give rise to this action are as follows. Ms. Suzanne Barkes, appellee, and Dr. Alvin Gilbert, appellant, entered into a relationship beginning in January of 1989 which continued until June of 1994. Ms. Barkes claims that in September of 1990, Dr. Gilbert proposed marriage to her and that in December of 1990, she accepted. Ms. Barkes submits that she received an engagement ring from Dr. Gilbert. In reliance upon her impending marriage and at Dr. Gilbert's insistence, Ms. Barkes claims that she took early retirement in 1992. Subsequently, Ms. Barkes sold her home in January of 1993 and moved into Dr. Gilbert's home. Sometime in 1994, the parties' relationship began to deteriorate and Ms. Barkes left Dr. Gilbert's home.

In June of 1994 Ms. Barkes filed an action for Breach of Promise to Marry (BPM). Following Ms. Barkes' deposition, Dr. Gilbert filed a motion for summary judgment, which the trial court granted. Ms. Barkes appealed the decision of the trial court. As noted, the Kentucky Court of Appeals reversed the trial court and remanded the case for trial. Upon proper motion, we granted discretionary review. We now reverse the Court of Appeals.

## I. HISTORY OF ACTION FOR BREACH OF PROMISE TO MARRY.

The right of an individual to sue for Breach of Promise to Marry is a common law hybrid of tort and contract. Homer H. Clark, Jr., *The Law of Domestic Relations in the United States,* 1 (2d ed.1987). Its origin; however, goes back to canon law, which only enforced such a breach through specific performance of the promise. W.J. Brockelbank, *The Nature of the Promise to Marry,* 41 Ill.L.Rev. 1, 3 (1946); Harter F. Wright, *The Action for Breach of the Marriage Promise,* 10 Va.L.Rev. 361, 364 (1924). Through time such harsh measures were no longer enforced. The common law has since adopted the action.

In the fifteenth century, English courts embraced the action, primarily because the basis of marriage was largely viewed as a property transaction. Clark, *supra,* at 2; G.M. Tevelyan, *English Social History* 313 (1942); W. Goodsell, *A History of Marriage and the Family* 328–31 (1934). However, in those early times, the aggrieved party was only able to recover monies expended on a deceitful promise to marry. Clark, *supra,* at 1. In the seventeenth century, the need to prove deceit was eliminated from the cause of action. Clark, *supra,* at 1; Brockelbank, *supra,* at 3–4.

Following the lead of England, the American colonies adopted the action. Wright, *supra,* at 366. The action found a receptive audience in this country eventually becoming more popular in America than in England. Michael Grossberg, *Governing the Hearth: Law and Family in Nineteenth–Century America,* 37 (1985). However, by the end of the last century commentators became highly critical of the BPM action and favored restricting or eliminating it. McCormick,

Handbook on the Law of Damages, 403–04 & n. 56 (1935); Wright, *supra*, at 371–75.

Today, the concept of marriage is generally no longer perceived as an economic transaction. Rather is regarded as a union of two persons borne out of love and affection, rather than a device by which property is exchanged. Clark, *supra*, at 3; Jeffrey Kobar, Note, *Heartbalm Statutes and Deceit Actions*, 83 Mich.L.Rev. 1770, 1778 (1985).

The elements of the BPM action are predicated upon contract principles with the exception of damages, which has its roots in tort. *Scharringhaus v. Hazen*, 269 Ky. 425, 107 S.W.2d 329, 336 (1937). Case authority with respect to the elements is quite old. First, there must be mutual promises to marry one another. *Burnham v. Cornwell*, 55 Ky. (16 B.Mon.) 284, 286, 63 Am.Dec. 529 (1855). Furthermore, an offer and acceptance of the promise must be proven for an action to lie. *Burks v. Shain*, 5 Ky. (2 Bibb) 341, 342, 5 Am.Dec. 616 (1811). The offer, however, need not be formal. "Any expression ... of readiness to be married is sufficient." *Elmore v. Haddix*, Ky., 254 Ky. 292, 71 S.W.2d 620, 622 (1934) (*citing* 9 C .J. 336). In addition, the contract to marry must be free from fraud based on the presumptions of innocence and purity of each promising party when entering into the agreement. *Barrett v. Vander-Meulen*, Ky., 264 Ky. 441, 94 S.W.2d 983, 985 (1936).

When the contract to marry has been breached, the injured party must suffer some form of damages. Because the issue of damages stems from tort principles, the amount is not limited to what is recoverable in the typical contract action for a breach of promise. *Scharringhaus v. Hazen*, Ky., 269 Ky. 425, 107 S.W.2d 329, 336 (1937). Three general classes of damages have emerged from this action: compensatory damages relating to the loss of the marriage, aggravated damages for seduction under promise of marriage, and punitive damages for malicious conduct. *Stanard v. Bolin*, 88 Wash.2d 614, 617–19, 565 P.2d 94, 96 (1977). *See also Annotation: Measure and Elements for Breach of Contract to Marry*, 73 A.L.R.2d 553 (1960). In Kentucky, this Court laid down an exhaustive list of factors to consider when estimating damages:

> [I]t is proper to consider anxiety of mind produced by the breach; loss of time and expenses incurred in preparation for the marriage; advantages which might have accrued to plaintiff from the marriage; the loss of a permanent home and advantageous establishment; plaintiff's loss of employment in consequence of the engagement or loss of health in consequence of the breach; the length of the engagement; the depth of plaintiff's devotion to defendant; defendant's conduct and treatment of plaintiff in his whole intercourse with her; injury to plaintiff's reputation or future prospects of marriage; plaintiff's loss of other opportunities of marriage by reason of her engagement to defendant; plaintiff's lack of independent means; her altered social condition in relation to her home and family, due to defendant's conduct; and the fact that she was living unhappily at the time of the alleged promise.

*Scharringhaus* at 336 *citing*, 9 C.J. 372.

The last case in which this Court issued a ruling on the breach of promise to marry action was in the 1937 *Scharringhaus* case.

## II. SHOULD THE CAUSE OF ACTION FOR BREACH OF PROMISE TO MARRY BE ABOLISHED FROM KENTUCKY COMMON LAW?

In deciding whether to modify the common law, this Court must weigh the benefits versus the burdens of the proposed change. We shall examine the rationale for removing the BPM action from the common law and then we shall discuss the reasons why it should be retained.

The primary argument in favor of abolition of the BPM action is that society's view of marriage and women have changed dramatically since this cause of action was adopted. While technically either a man or a woman could bring the cause of action in question, this Court is unaware of a man ever asserting such claim before the courts of the Commonwealth. The cases which interpret this cause of action make clear the party who is sought to be protected:

A promise to marry is not infrequently one of the base and wicked tricks of the wily seducer to accomplish his purposes by overcoming that resistance which female virtue makes to his unholy designs.

*Scharringhaus v. Hazen,* 269 Ky. 425, 107 S.W.2d 329, 336 (1937) (*citing Goodall v. Thurman,* 38 Tenn. 209, 1 Head 209 (Tenn. Dec. Term 1858). This language reflects the sexism and paternalism that pervade this cause of action. While one could certainly debate whether equality has been achieved between women and men in our society, it is certainly beyond issue that women today possess far more economic, legal and political rights than did their predecessors. Accordingly, we must examine the utility of the BPM action in the context of the present day, not in the era in which it was created.

Our review of the actions taken by other jurisdictions indicates that twenty-eight states have legislatively or judicially abolished the Breach of Promise to Marry action.[1] The work of various commentators on this issue demonstrates criticism starting late in the last century and continuing up to the present.[2]

▮ "Although marriages are still contracted for material advantages, it is now popularly believed that the choice of a spouse should be the result of that complex experi-ence called love." Clark, *supra,* at 3. The public policy of the Commonwealth undoubtedly calls for this Court to uphold marriage vows; however, "we see no benefit in discouraging or penalizing persons who realize, *before* making these vows, that for whatever reason, they are unprepared to take such an important step." *Jackson v. Brown,* 904 P.2d 685, 687 (Utah 1995) (emphasis in original).

Given these arguments in favor of abolition as well as the support offered by other jurisdictions and commentators, we now turn to the arguments in favor of its retention. There are two primary arguments in favor of retaining the BPM action. The first is that the General Assembly has implicitly adopted it by placing a statute of limitations upon the period in which such an action can be brought. KRS 413.140(1)(c). The second is that the doctrine of stare decisis compels this Court to retain the action since it is a long-standing remedy and there is no sound reason to eliminate it because it still serves the useful purpose of remedying injury to those who are left standing at the altar.

▮ We find no merit in the first argument that the General Assembly affirms a common law cause of action, such as BPM, by placing a statute of limitations upon it. No legislative approval or disapproval of this

---

1. Alabama (Ala.Code § 6–5–330 (1975)); California (Cal.Civ.Code § 43.5 (Deering 1998)); Colorado (Colo.Rev.Stat. § 13–20–202 (1997)); Connecticut (Conn.Gen.Stat.Ann. § 52–572b (West 1991)); Delaware (Del.Code Ann. tit. 10 § 3924 (1996)); District of Columbia (D.C.Code Ann. § 16–923 (1998)); Florida (Fla.Stat.Ann. § 771.01 (West 1991)); Indiana (Ind.Code Ann. § 34–12–2–1 (Michie 1998)); Maine (Me.Rev.Stat.Ann. tit. 14, § 854 (West 1980)); Maryland (Md.Code Ann., Cts. & Jud.Proc. § 5–801(1997)) and (Md.Code Ann., Fam.Law § 3–102 (1997)); Massachusetts (Mass.Gen.Laws Ann. Ch. 207, § 47A (West 1987)); Michigan (Mich.Comp.Laws Ann. § 600.2901 (West 1998)); Minnesota (Minn.Stat.Ann. § 553.03 (West 1998)); Montana (Mont.Code Ann. § 27–1–602 (1997)); Nevada (Nev.Rev.Stat. § 41.380 (1995)); New Hampshire (N.H.Rev.Stat.Ann § 508:11 (1997)); New Jersey (N.J.Stat.Ann. § 2A:23–1 (West 1987)); New York (N.Y.Civ. Rights Law § 80–a (McKinney 1992)); North Dakota (N.D.Cent.Code § 14–02–06 (1997)); Ohio (Ohio Rev.Code Ann. § 2305.29 (Anderson 1997)); Pennsylvania (23 Pa.Cons.Stat.Ann. § 1902 (West 1998)); Utah (*Jackson v. Brown,* 904 P.2d 685 (Utah 1995));

Vermont (Vt.Stat.Ann. tit. 15, § 1001 (1997)); Virginia (Va.Code Ann. § 8.01–220 (Michie 1997)); West Virginia (W.Va.Code § 56–3–2a (1997)); Wisconsin (Wis.Stat.Ann. § 768.01 (West 1993)); Wyoming (Wyo.Stat.Ann. § 1–23–101 (Michie 1977)).

2. Note, *Domestic Relations: Avoid of Anti–Heartbalm Legislation by the Action of Fraud,* 8 Hasting L.J. 210 (1957); Comment, *California Reopens the 'Heartbalm' Action,* 9 Stan.L.Rev. 406 (1957); *Recent Cases, Breach of Promise—Statute Outlawing Breach–of–Promise Suits Does not Bar Action Based on Fraudulent Promise to Marry;* 70 Harv.L.Rev. 1098, 1099 (1957); W.J. Brockelbank, *The Nature of the Promise to Marry—A Study in Comparative Law,* 41 Ill.L.Rev. 1, 199 (1946); Feinsinger, *Legislative Attack on Heart Balm,* 33 Mich.L.Rev. 983 (1935); Brown, Breach of Promise Suits, 77 U.Pa.L.Rev. 474 (1929); Wright, *The Action for Breach of Promise of Marriage,* 10 Va.L.Rev. 361 (1924); White, *Breach of Promise of Marriage,* 10 L.Q.Rev. 135 (1894).

court-created claim is indicated by such proceedings. Rather, KRS 413.140(1)(c) merely restricts the time span in which such a claim can be brought before the Court of Justice. It is well established that the legislature has the power to limit the time in which a common law action can be brought. *Saylor v. Hall*, Ky., 497 S.W.2d 218, 223 (1973). At the same time; however, this Court is entitled to find that a common law cause of action should no longer be maintained. *D & W Auto Supply v. Department of Revenue*, Ky., 602 S.W.2d 420, 424 (1980). Accordingly, the fact that the legislature has limited the time in which a BPM action must be brought is of no significance and has no relevance to this case.

 The second argument is equally as unpersuasive. Stare decisis is a doctrine which has real meaning to this Court. "When a court of institutional review announces a principle of law to apply to a general set of facts, the doctrine of stare decisis requires the court, in the absence of 'sound reasons to the contrary' to adhere to that same principle in future cases where there is a similar factual pattern." *Williams v. Wilson*, Ky., 972 S.W.2d 260, 269 (1998) (Stephens, C.J., concurring) (*quoting Hilen v. Hays*, Ky., 673 S.W.2d 713, 717 (1984)). However, when this Court finds a common law cause of action to be anomalous, unworkable or contrary to public policy, it will abolish the action. *D & W Auto Supply v. Department of Revenue*, Ky., 602 S.W.2d 420, 424 (1980).

We believe the cause of action for breach of promise to marry has become an anachronism that has out-lived its usefulness and should be removed from the common law of the Commonwealth. "It is a barbarous remedy, outgrown by advancing civilization and, like other outgrown relics of a barbarous age, it must go." Wright, *supra*, at 382. As when this Court abolished the action for intentional interference with the marital relation in *Hoye v. Hoye*, Ky., 824 S.W.2d 422,

425 (1992), we "have the power as an appellate court to resolve the question of whether to abolish" the action for BPM. *Craft v. Commonwealth*, Ky., 343 S.W.2d 150 (1961). Accordingly, the action for Breach of Promise to Marry is no longer a valid cause of action before the courts of the Commonwealth.

This Court wishes to make clear that it in no way prohibits other remedies, such as claims for breach of contract and intentional infliction of emotional distress, should a party be able to make such a case. As the Supreme Court of Utah noted in *Jackson v. Brown*, 904 P.2d 685, 687 (1995), any direct "economic losses suffered because of . . . [the defendant's] promise to marry [the plaintiff] (such as normal expenses attendant to a wedding) may be recoverable under a theory of . . . breach of contract. . . . [I]f a proper case is made out, emotional damages resulting from [the defendant's] actions may be remedied by an action for intentional infliction of emotional distress. Accordingly, no fundamental remedy is lost to this or any other plaintiff by our decision that a breach of promise to marry no longer has any legal significance." *Id.*

While we are removing a cause of action from the common law, we are not eradicating the ability of a party to seek a remedy for such a wrong, but rather we are modifying the form that remedy may take. Accordingly, our jural rights doctrine, enunciated in *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932), is not implicated in this matter. *Williams v. Wilson*, Ky., 972 S.W.2d 260, 271 (1998) (Cooper, J., dissenting) (stating that modification of a jural right is permissible as long as the right itself is not abolished). Since we have merely modified the means by which certain wrongs may be remedied, we have no need to address the jural rights doctrine in this case as our action here today does not abolish a common law right existing at the adoption of the 1891 Kentucky Constitution.[3]

---

3. We wish to distinguish this case from *Williams v. Wilson*, Ky., 972 S.W.2d 260 (1998), in which this Court struck down part of KRS 411.184. We struck that law because it did not simply modify an existing jural right, but rather it impaired the right by changing the common law standard of proof. Under KRS 411.184, recovery was made substantially harder by raising the standard of proof. Accordingly, KRS 411.184 impaired a fundamental right in an impermissi-

## III. APPLICATION OF LAW TO THE FACTS OF THIS CASE.

■ For several reasons, Ms. Barkes is precluded from recovery from Dr. Gilbert under any contractual theory. First, there were none of the "normal expenses attendant to a wedding" such as a bridal dress, down payment on a reception hall or the like. Ms. Barkes' economic claims were only for the sale of her house and taking early retirement. Neither of these damages are the type of direct wedding-related economic out-of-pocket expenses that are recoverable. Since only direct economic losses of this type can be recovered and there is no proof of any such losses in this case, no recovery is possible. Second, since no wedding date was ever actually set, there is no way Ms. Barkes could recover under any contractual theory because she cannot otherwise affirmatively demonstrate the parties' final and serious intent to enter into marriage. Accordingly, since both of these conditions would have to be met before Ms. Barkes could state a viable contract claim, there is no way that she could maintain any sort of contract action against Dr. Gilbert.

■ Under the principles of Intentional Infliction of Emotional Distress (IIED), Ms. Barkes is similarly precluded because the record demonstrates that she falls short of proving the elements of this claim. The tort of IIED, or outrage, was adopted by this Court in *Craft v. Rice*, Ky., 671 S.W.2d 247, 251 (1984), because "[t]here is a right to be free of emotional distress arising from conduct by another." *Id.* To make out a claim of IIED, the following elements must be proved: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Kroger Co. v. Willgruber*, Ky., 920 S.W.2d 61, 67 (1996); *Craft*, 671 S.W.2d at 249.

In examining the four elements of IIED as applied to the instant facts, we believe that the second and third elements require no further clarification. However, we have concluded that the first and fourth elements require a more detailed discussion.

■ With regard to the first element, that the conduct be intentional or reckless, a wrongdoer who intentionally causes severe emotional distress to another by making a promise to marry and then breaking that promise obviously satisfies this element. However, since IIED can also be caused by reckless behavior, it is important to discuss precisely how such conduct must be evaluated. Recklessness in this context requires that the wrongdoer's actions reflect a lack of consideration well in excess of the thoughtlessness that would be evident in most engagements which are broken off. To meet the necessary recklessness threshold, the wrongdoer must engage in conduct which demonstrates total disregard for the other party. The plaintiff must prove conduct that is so insensitive and irresponsible as to rise to the level of being deemed virtually intentional. It must be the conduct which any normal and prudent person would know was likely to cause extreme emotional distress.

With respect to the fourth element, there is a fairly high level of emotional distress any time any engagement is broken off. To meet the element of severe emotional distress; however, substantially more than mere sorrow is required. From the record, it is clear that Ms. Barkes has not alleged facts which could even begin to support a claim for IIED.

## CONCLUSION

The ideas which predominated in the era that begat the cause of action for Breach of Promise to Marry no longer command the allegiance of the Citizens of the Commonwealth. Accordingly, this Court must act to keep the Common Law of Kentucky in step with its citizens. For the reasons stated above we no longer believe that this cause of action should be a part of our common law.

ble fashion. Our action today does not impair any right, but simply modifies the means by

which those rights may be accessed.

When we find our common law to be anomalous, unworkable or contrary to public policy, we are bound to modify it. *D & W Auto Supply v. Department of Revenue*, Ky., 602 S.W.2d 420, 424 (1980). That is what we have done in this matter. We wish to stress that no fundamental right had been impaired by this Court. Rather we have simply modified the methods by which relief for violation of those rights may be recovered by the injured parties. We reverse the Kentucky Court of Appeals and reinstate the trial court's order dismissing this claim.

LAMBERT, C.J., JOHNSTONE and STUMBO, JJ., concur.

COOPER, J., dissents in a separate dissenting opinion.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.

COOPER, Justice, dissenting.

Having successfully purged the common law of the tort of alienation of affections in *Hoye v. Hoye*, Ky., 824 S.W.2d 422 (1992), the majority of this Court now consigns to oblivion yet another ancient tort, the breach of promise to marry. While I claim no affection for either of these musty causes of action, I do defend this Court's obligation to apply the law with some degree of consistency, including the application of constitutional principles to ourselves the same as we apply them to the General Assembly. In *Williams v. Wilson*, Ky., 972 S.W.2d 260 (1998), a majority of this Court reiterated the constitutional myth that common law causes of action which existed prior to the adoption of the present Constitution are "jural rights" which cannot be abolished. Like the cause of action for alienation of affections, the cause of action for breach of promise to marry falls into that category. *Burnham v. Cornwell*, 55 Ky. 284, (16 B. Mon. 284) (1855); *Burks v. Shain*, 5 Ky. (2 Bibb) 341 (1811). Far be it from me to defend the jural rights doctrine. *Williams v. Wilson, supra*, at 269–76 (dissenting opinion). However, if a pre–1891 cause of action is cloaked with constitutional protection, it is protected as well from an act of this Court as it is from an act of the legislature. *Id.* at 274.

I am aware that some advocates of the jural rights doctrine now assert that it applies only to "rights of action for damages for death or injuries caused by negligence." *See Fireman's Fund Ins. Co. v. Government Employees Ins. Co.*, Ky., 635 S.W.2d 475, 478, n. 7 (1982), *overruled on other grounds, Perkins v. Northeastern Log Homes*, Ky., 808 S.W.2d 809 (1991), narrowing the scope previously established in *Happy v. Erwin*, Ky., 330 S.W.2d 412, 413 (1959). However, the jural right protected in *Williams v. Wilson, supra*, was the right to punitive damages, which are awarded not as damages to compensate for death or injuries, but to punish and deter wrongdoing. *Id.* at 273 (dissenting opinion), citing *Hensley v. Paul Miller Ford, Inc.*, Ky., 508 S.W.2d 759, 762–63 (1974) and *Ashland Dry Goods Co. v. Wages*, 302 Ky. 577, 195 S.W.2d 312, 315 (1946). *See also Kentucky Utilities Co. v. Jackson County R.E.C.C.*, Ky., 438 S.W.2d 788, 790 (1968), deeming a cause of action for indemnity to be a jural right, and *Meyers v. Chapman Printing Co.*, Ky., 840 S.W.2d 814, 820 (1992), declaring that the protections contained in the Civil Rights Act are jural rights.

The majority opinion asserts that today's decision does not implicate the jural rights doctrine at all, because "we are not eradicating the ability of a party to seek a remedy for such a wrong, but rather we are modifying the form that remedy may take." (op. at 776.) In *Williams v. Wilson, supra*, the jural rights doctrine was extended past protection against the abolition of a common law right of action to protection against any impairment thereof. (The statute at issue in *Williams* did not abolish punitive damages, but only set standards to guide the jury in determining whether to award such damages and how much to award.) Regardless, the majority opinion states that "the action for Breach of Promise to Marry is no longer a valid cause of action before the courts of the Commonwealth." (op. at 776.) That language can lead to but one conclusion: the cause of action for breach of promise to marry has thereby been abolished.

GRAVES and WINTERSHEIMER, JJ., join this dissent.