Casey Marie **UNDERHILL,** Plaintiff,

v.

Mike **CAUDILL** and **United Parcel Service,** Defendants.

Civil Action No. 3:99CV–217–H.

United States District Court, W.D. Kentucky, at Louisville.

Jan. 19, 2001.

David W. Carby, Sholar & Associates, Shepherdsville, KY, Julia B. Barry, Louisville, KY, for Casey Marie Underhill.

Mike Caudill, Louisville, KY, pro se.

Erin MacCraken Roark, Woodward, Hobson & Fulton, Louisville, KY, Tony C. Coleman, Kathleen Biggs Wright, Frost, Brown & Todd, Louisville, KY, for United Parcel Service.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, Casey Underhill, sued United Parcel Service ("UPS") and Mike Caudill in Jefferson Circuit Court alleging sexual harassment, sexual discrimination, retaliation, and intentional infliction of emotional distress. UPS removed to this Court on the basis of diversity, claiming that Ms. Underhill fraudulently joined Mr. Caudill, the nondiverse defendant. UPS has moved for summary judgment, arguing that Plaintiff has not alleged facts sufficient to prove liability under Kentucky law. This Court has reviewed the record and the parties' arguments carefully. Plaintiff endured inappropriate behavior by her coworker and UPS did not respond as well as possible. However, her coworker's improper behavior does not rise to actionable conduct and UPS's prompt response, though not perfect, meets the requirements of Kentucky law. Accordingly, this Court will grant UPS's motion for summary judgment.

I.

Plaintiff began working for UPS in August 1996, her senior year of high school. Although some of her coworkers occasionally told dirty jokes, she worked without major incident until January 8, 1998 when she and Mike Caudill, a 39 year old coworker, arrived for work early. He asked her inappropriate questions about her breasts. Ms. Underhill felt very uncomfortable and threatened. She immediately called her mother, then reported the incident to her supervisor, Jeff Pace. Mr. Pace advised her to talk to Dave Andrews, a UPS manager. Ms. Underhill and Mr. Andrews discussed the incident. Ms. Un-

derhill felt that Mr. Andrews did not take her complaint seriously.

The next day, Ms. Underhill discussed the incident with two members of UPS Human Resources. UPS officials also interviewed several other workers to determine whether anyone witnessed the event and conducted a workgroup meeting to discuss the sexual harassment policy at UPS. Mr. Caudill received a verbal warning for his behavior and was also told not to discuss the matter. In spite of these warnings, Ms. Underhill observed Mr. Caudill in a conversation with other coworkers that appeared to involve the incident.

Shortly thereafter, Mr. Caudill gestured to Ms. Underhill in a manner she considered sexually offensive. Once again, she reported the incident. Her supervisor concluded that the gestures were not offensive and did not merit further investigation. A few days later, the union steward informed UPS management that Ms. Underhill did not consider her complaints about Mr. Caudill sufficiently resolved. UPS officials responded by meeting again with Mr. Caudill to discuss the allegations. This time UPS decided to transfer Mr. Caudill to a work area away from Ms. Underhill.

Ms. Underhill also reported incidents with a different supervisor, Kevin Shellman, after Mr. Caudill's transfer. She complained about her treatment on an occasion when she requested to leave early to pick up her sister. On another occasion, Ms. Underhill walked away from a group meeting before Mr. Shellman had finished his presentation. Ms. Underhill complained to Human Resources about the way that Mr. Shellman and another supervisor discussed her early departure from the presentation. Her complaints were general in nature and did not involve a gender reference or harassment.

Ms. Underhill then took an approved leave of absence from February 28, 1998 to March 17, 1998. She extended it as a medical leave from March 18, 1998 to April 1, 1998. Ms. Underhill's doctor released her to work on April 2, 1998, but she did not do so. UPS advised Ms. Underhill that it had no medical documentation for her post-April 1, 1998 leave and encouraged her to provide it. By separate letter UPS also offered Ms. Underhill the option of returning to a different work area. Hearing no response, UPS terminated Ms. Underhill effective July 31, 1998.

These facts were summarized from extensive review of the record in this case. The Court noted numerous discrepancies between counsel for Ms. Underhill's assertions of fact and the facts as demonstrated in the record. Specifically, counsel's assertions that Mr. Caudill physically threatened Ms. Underhill by moving or reaching toward her directly contradict Ms. Underhill's and Mr. Caudill's deposition testimony where they both described a verbal conversation with no indication of physical movement. Such discrepancies undercut the ability of this Court to efficiently review and decide matters as well as diminish the Court's ability to rely on assertions of counsel.

## II.

Plaintiff does not contest UPS's claim of fraudulent joinder. Fraudulent joinder arises when the removing party, here UPS, "present[s] sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493–94 (6th Cir.1999). Plaintiff can only bring claims under the Kentucky Civil Rights Act against employers, and not against individuals. KENT.REV.STAT. § 344.040 (West 2001). Thus, Plaintiff's only potential

claim against Caudill is the intentional infliction of emotional distress, also known as the tort of outrage.

▮ To prevail on a claim of outrage, a plaintiff must prove four elements, "(1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe." *Gilbert v. Barkes,* 987 S.W.2d 772, 777 (Ky.1999) (citations omitted). Plaintiff's allegations against Caudill, if proven, do not make out "at least a colorable cause of action against [UPS] in the [Kentucky] state courts." *Jerome–Duncan, Inc. v. Auto–By–Tel, Inc.,* 176 F.3d 904, 908 (6th Cir.1999) (citing *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir.1994)). Specifically, Plaintiff's facts do not even remotely resemble the kind of outrageous behavior actionable under Kentucky law. *See, e.g., Humana of Kentucky v. Seitz,* 796 S.W.2d 1 (Ky.1990). Therefore, UPS has met its burden of demonstrating fraudulent joinder and the complaint as to Caudill is therefore dismissed.

### III.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The issue is whether the evidence submitted presents a sufficient disagreement about the material facts so that submission to a jury is necessary, or whether the evidence is so one-sided that a party

must prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505. The Court will now each of Ms. Underhill's claims against UPS in turn.

▮ This Court will use the federal standard for evaluating Ms. Underhill's claims since the standards for proving sex discrimination and harassment under the Kentucky Civil Rights Act reflect those of Title VII. *Smith v. Leggett Wire Co.,* 220 F.3d 752, 758 (6th Cir.2000); *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814, 821 (Ky.1992). To prevail on a sexual harassment claim, Ms. Underhill must show, among other things, that the harassment changed the terms and conditions of employment and created a hostile or abusive work environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burnett v. Tyco Corp.,* 203 F.3d 980, 982 (6th Cir. 2000).

▮ Taking the facts in the light most favorable to Ms. Underhill, on two occasions Mr. Caudill treated Ms. Underhill in a sexually offensive manner. Those two incidents are mild compared to other cases in which this Court has denied summary judgment. Those incidents are less numerous and less severe than those where one typically finds a change in the work place atmosphere. Moreover, UPS did act quickly, which is to be commended. Employers often wait until events reach a crisis before recognizing a problem. UPS did discipline Mr. Caudill, though initially not quite comprehensively enough or severely enough to protect Ms. Underhill from further indignities. After the second allegation, UPS acted more decisively to prevent further incidents. Title VII or the Kentucky Civil Rights Act, however, do not impose liability for every deviation from appropriate, professional behavior in the workplace. *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 81, 118 S.Ct. 998,

140 L.Ed.2d 201 (1998). After her initial complaint, Ms. Underhill had legitimate objections to the response of UPS. On the other hand, UPS had every reason to believe that a reprimand and further training would end the problem. These kinds of disagreements alone do not create a viable cause of action because the behavior Plaintiff endured never came close to the severity required for sexual harassment under Title VII or Kentucky law. From the facts alleged, including UPS's two steps of discipline, no reasonable jury could say that UPS allowed a hostile or abusive work place either to exist or continue.

 Ms. Underhill also claims that UPS retaliated against her for complaining about Mr. Caudill's sexually offensive behavior. To prevail on a retaliation claim, Ms. Underhill must show that (1) she engaged in a protected activity; (2) UPS knew about the protected activity; (3) UPS took employment action adverse to Ms. Underhill; and (4) there was a causal connection between the activity engaged in and the adverse treatment. *Fenton v. Hi-SAN, Inc.*, 174 F.3d 827, 831 (6th Cir. 1999). Ms. Underhill has met the first three prongs of *Fenton:* she complained about sexual harassment, UPS knew of the complaint, and UPS subsequently fired her. The other incidents alleged by Ms. Underhill are not adverse employment actions because they did not materially change the terms or conditions of her employment. *Kocsis v. Muli–Care Mgmt., Inc.* 97 F.3d 876, 886 (6th Cir.1996).

 However, Ms. Underhill cannot establish the fourth prong. Ms. Underhill's doctor released her to return to work on April 2, 1998. Ms. Underhill did not return to work nor did she provide any other medical justification for continued leave. UPS contacted Ms. Underhill numerous time to request medical documentation. It offered her work in a different area. UPS's policy is to terminate employees after three absences without notice. Ms. Underhill was absent four months without documentation. UPS terminated her for that reason, which is undeniably a legitimate one. Plaintiff has offered no evidence suggesting why the otherwise legitimate reasons for her termination were a mere pretext to cover unlawful reasons. Moreover, the four months undocumented absence severs any connection between her protected activity and her termination. No jury could reasonably find otherwise on this evidence.

 Ms. Underhill finally claims that UPS's handling of her complaint amounted to a constructive discharge. To be successful on such a claim, Plaintiff must have evidence that the abusive or sexually charged work atmosphere prevented her return to work and caused her termination. Only if the working conditions changed to the point where a "reasonable person in the employee's shoes would have felt compelled to resign" would UPS's conduct amount to a constructive discharge. *Kocsis,* 97 F.3d at 887 (citations omitted). The record simply does not support such a finding in this case. The working conditions had not risen to the level of a hostile work environment, let alone a workplace where one would feel compelled to resign. In addition, Ms. Underhill did not respond to UPS's attempts to document her leave or return her to work. Finally, UPS's "presentation of other legitimate options for continued employment with the company, even in less prestigious positions, precludes a finding that [s]he was constructively discharged." *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 515 (6th Cir.1991).

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved for summary judgment on Plaintiff's claims of sexual

harassment, sexual discrimination, retaliation, and intentional infliction of emotional distress. The Court has reviewed the evidence and has filed a Memorandum Opinion. The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

This is a final and appealable order.