2003 UT 9

**David D. BENNETT, Plaintiff and Appellant,**

v.

**JONES, WALDO, HOLBROOK & MCDONOUGH; Christopher L. Burton; Sidney G. Baucom; James S. Lowry; Post, Kirby, Noonan & Sweet; and Michael L. Kirby, Defendants and Appellees.**

No. 20010296.

Supreme Court of Utah.

April 1, 2003.

Rehearing Denied May 20, 2003.

James N. Barber, Daniel G. Moquin, Franklin Reed Bennett, Salt Lake City, for plaintiff.

R. Brent Stephens, Maralyn M. Reger, Salt Lake City, for Jones Waldo defendants.

James S. Jardine, Rick B. Hoggard, Arthur B. Berger, Salt Lake City, for Post Kirby defendants.

RUSSON, Justice:

¶ 1 This case involves an action brought by David D. Bennett ("Bennett") against the law firms of Jones, Waldo, Holbrook & McDonough ("Jones Waldo") and Post, Kirby, Noonan & Sweet ("Post Kirby") and several of the law firms' partners alleging legal malpractice through breach of fiduciary duty, breach of contract, abuse of process through wrongful institution of civil proceedings, intentional infliction of emotional distress, and deceit or collusion in violation of section 78–51–31 of the Utah Code. The action arises

from the law firms' representation of Bennett in a federal securities class action lawsuit against Gen–Probe, Inc. ("Gen–Probe"), of which Bennett was a minority shareholder.

¶ 2 Bennett appeals (1) the trial court's grant of Jones Waldo, Christopher L. Burton, Sidney G. Baucom ("Baucom"), and James S. Lowrie's ("Lowrie") (collectively, "Jones Waldo defendants") motion to dismiss Bennett's fourth amended complaint for failure to state a claim upon which relief can be granted, pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure, and (2) the trial court's grant of Post Kirby and Michael L. Kirby's ("Kirby") (collectively, "Post Kirby defendants") motion to dismiss Bennett's fourth amended complaint for lack of personal jurisdiction, pursuant to rule 12(b)(2) of the Utah Rules of Civil Procedure.

## BACKGROUND AND PROCEDURAL HISTORY

### I. UTAH GEN–PROBE LITIGATION

¶ 3 On December 5, 1989, Bennett sued Gen–Probe and its officers and directors in United States District Court for the District of Utah ("Utah Gen–Probe litigation"), seeking to enjoin the purchase of Gen–Probe by a Japanese company because the proposed purchase price was allegedly inadequate. Bennett also asserted derivative claims on behalf of Gen–Probe against its officers and directors, and damage claims on behalf of a proposed class of the minority shareholders of Gen–Probe.

¶ 4 On April 18, 1990, Bennett and Jones Waldo entered into a retainer agreement in which Jones Waldo agreed to act as lead counsel in the Utah Gen–Probe litigation. The retainer agreement provided, among other things, that "[w]ith the exception of decisions regarding settlement, [Jones Waldo] shall have the authority to make all decisions relating to the prosecution of [the] Lawsuit in its absolute discretion" and that "Clients [1] agree that [Jones Waldo] may, at its sole discretion, retain associate counsel to assist in the prosecution of Client's Causes of

---

1. Under the retainer agreement, "Clients" referred to Bennett, James W. Bennett, Lorraine J. Engstrom, Bud Mahas Construction Company, Harold Sandbeck, Arden Lubeck, and Franklin Reed Bennett, all signatories to the agreement.

Action provided associate counsel is retained at [Jones Waldo's] sole expense." Furthermore, under the retainer agreement, the clients committed "to fully cooperate with [Jones Waldo] in the prosecution of the lawsuit" and acknowledged that "[Jones Waldo's] agreement to represent Clients is contingent upon Client's active and continuous cooperation throughout the Lawsuit."

## II. CALIFORNIA GEN–PROBE LITIGATION

¶ 5 On August 24, 1990, the Utah Gen–Probe litigation was transferred from Utah to the United States District Court for the Southern District of California ("California federal district court"), where Gen–Probe was headquartered ("California Gen–Probe litigation"). As a result, Jones Waldo was required to retain local California counsel. On October 24, 1990, Post Kirby became co-counsel and local counsel with Jones Waldo on the California Gen–Probe litigation. However, Post Kirby never signed or became a party to the retainer agreement between Bennett and Jones Waldo.

¶ 6 Specifically, Post Kirby was hired by Jones Waldo as co-counsel in a joint representation with Jones Waldo of a class in the California Gen–Probe litigation. In a letter dated October 24, 1990, addressed to Jones Waldo, Post Kirby described the "proposed arrangement for representation" of Bennett's class action, stating:

> [Jones Waldo] will continue to act as lead counsel for the plaintiffs, and [Post Kirby] will become co-counsel of record for the plaintiffs. [Post Kirby] will have considerably greater responsibility than merely acting as local counsel, but [Jones Waldo] will continue to have the ultimate decision making authority, after consultation with [Post Kirby], on any substantive or tactical decisions.

¶ 7 On December 18, 1991, two of the named plaintiffs in the California Gen–Probe litigation authorized Jones Waldo to settle the class action suit. Bennett openly opposed the proposed settlement, claiming that

Jones Waldo and Post Kirby had failed to fully investigate the claims and that the amount of the settlement offer was inadequate.

¶ 8 On August 13, 1992, Bennett opted out of the proposed settlement. As a result, Jones Waldo informed Bennett by letter on August 17, 1992, that Bennett's decision to opt out of the class action settlement terminated Jones Waldo's representation of Bennett.

¶ 9 On August 26, 1992, the California federal magistrate court held a "Good Faith Settlement Hearing" at which the court approved the proposed settlement as fair, found that the class had been adequately and competently represented by counsel, and subsequently entered a final judgment and order of dismissal with prejudice the next day. Despite having opted out of the settlement, Bennett attended the hearing and was allowed to present his objections on the record. Bennett acknowledged that because he had decided to opt out of the settlement he had no standing to challenge the settlement in that forum and that he had no right to appeal the court's approval of the settlement.

## III. BAR ORDER LITIGATION

¶ 10 In early to mid–1994, Jones Waldo learned that Bennett intended to sue Jones Waldo on behalf of the entire class for alleged legal malpractice because he thought the settlement was unfair and improper. Suspecting that Bennett's claims of malpractice were nothing more than a collateral attack on the fairness and adequacy of the class action settlement, Jones Waldo requested that Post Kirby obtain a court order ("bar order") from the California federal district court prohibiting litigation collaterally attacking the finality of the class action settlement.[2]

¶ 11 On July 5, 1994, the California federal district court issued a temporary bar order that was made permanent on October 3, 1994, after a hearing on the issue on September 6, 1994. Bennett was served in Utah with a copy of the temporary bar order which

---

2. In its final order, the California federal magistrate court specifically retained jurisdiction to issue bar orders in order to protect the class action settlement.

permitted him to oppose any permanent bar order in California. Bennett was present and represented by counsel at the September 6 hearing.

¶ 12 The bar order restrained Bennett from "initiating or maintaining any lawsuit against [Jones Waldo] ... or any other class counsel which in any way involves" the "sufficiency or fairness of the class action settlement," the "competency of class counsel and counsel's legal services on behalf of the class," the "award of fees and costs to class counsel," and the "award of additional compensation to any of the named Plaintiffs" in the class action. The bar order expressly did not "bar or restrain David D. Bennett from pursuing solely his own individual claims as a former Gen–Probe shareholder, except to the extent such claims have been previously adjudicated by this court."

¶ 13 Bennett appealed the bar order to the Ninth Circuit Court of Appeals. While that appeal was pending, Bennett filed the instant action in Utah district court against Jones Waldo (but not against Post Kirby) on December 30, 1994.[3] Soon thereafter, on January 20, 1995, Bennett filed an amended complaint.

¶ 14 When Bennett filed his amended complaint, Jones Waldo, represented by Post Kirby, moved the California federal district court to hold Bennett in contempt of the bar order. At a hearing on the contempt motion on May 1, 1995, the California federal district court, after reviewing Bennett's complaint and the amended complaint filed in Utah district court, ordered Bennett to redact all of the allegations relating to the class action settlement and the competency of class counsel's representation of the class. Bennett agreed to file a second amended complaint, which he did on August 1, 1995.

¶ 15 In response to Bennett's second amended complaint, Jones Waldo again asked Post Kirby to move the California federal district court to hold Bennett in

contempt of the bar order because the allegations in the second amended complaint continued to focus impermissibly on the adequacy and fairness of the class action settlement and class counsel's representation of the class, essentially collaterally attacking the finality of the class action settlement. The California federal district court held a hearing on the second contempt motion on January 11, 1996. At this hearing, the California federal district court held Bennett in contempt of the bar order. The court fined Bennett and once again ordered him to amend his complaint to eliminate claims concerning the class action settlement and the competency of class counsel. Bennett appealed this contempt citation to the Ninth Circuit Court of Appeals. On February 9, 1996, Bennett filed in Utah district court his third amended complaint, omitting under protest the offending allegations.

¶ 16 On June 14, 1996, the Ninth Circuit Court of Appeals affirmed the original issuance of the bar order. In doing so, the Ninth Circuit "narrowly construed" the bar order so that the "Utah court may examine the adequacy of the class settlement, but only insofar as that settlement sheds light on [Jones Waldo's] representation of Bennett." On June 19, 1997, the Ninth Circuit reversed the contempt citation pursuant to the narrow construction of the bar order.

## IV. UTAH LEGAL MALPRACTICE LITIGATION

¶ 17 At the same time Jones Waldo and Post Kirby were pursuing the bar order and the contempt sanctions before the California federal district court and the Ninth Circuit, Bennett's case before the Utah district court remained pending. In response to the filing of Bennett's original complaint and various amended complaints, Jones Waldo moved to dismiss Bennett's action and stay the briefing of that motion in light of and in deference to the California federal district court's issu-

---

**3.** In addition, prior to filing his complaint in Utah district court, on February 1, 1993, Bennett filed a complaint with the Utah State Bar alleging unprofessional conduct by Jones Waldo in the prosecution of the Utah and California Gen–Probe litigations. This complaint was investigat-

ed by the Utah State Bar, and on June 1, 1994, the Utah State Bar summarily dismissed Bennett's complaint, concluding that "[Bennett's] complaint is unsupported by fact and does not raise the possibility of unprofessional conduct."

ance of the bar order and resolution of the contempt motions and interpretation of the relevant rulings by the California federal courts. The motion to stay was not an over-all stay of the proceedings but rather a stay of the briefing of the motion to dismiss. Bennett was allowed to file amended complaints even though the stay on briefing was in effect. The stay on briefing was issued on April 26, 1995. On July 6, 1998, the trial court officially lifted that stay.

¶ 18 On July 7, 1998, Bennett filed his fourth amended complaint, naming Post Kirby and Kirby, individually, and Jones Waldo attorneys Baucom and Lowrie, individually, as defendants for the first time.

¶ 19 In response to Bennett's fourth amended complaint, on September 4, 1998, the Jones Waldo defendants moved to dismiss the fourth amended complaint for failure to state a claim under Utah Rule of Civil Procedure 12(b)(6) and pursuant to the doctrine of collateral estoppel/issue preclusion.[4] On November 25, 1998, the Post Kirby defendants moved to dismiss the fourth amended complaint for lack of personal jurisdiction under Utah Rule of Civil Procedure 12(b)(2). Both motions were fully briefed by both sides. The trial court heard oral argument on both motions on August 30 and October 25, 1999.

¶ 20 On January 7, 2000, the trial court granted the Post Kirby defendants' motion to dismiss for lack of personal jurisdiction and instructed them to prepare a conforming order. The minute entry granting the motion explained that Post Kirby's motion was "granted based upon *all* of the analytical points and authorities set forth in Post Kirby's memorandum in support and in reply." The Post Kirby defendants submitted a proposed order on January 14, 2000, and Bennett filed an objection to the minute entry and the proposed order on January 28, 2000. On February 7, 2000, the Post Kirby defendants filed their response to Bennett's objections accompanied by another copy of the proposed order. The trial court signed the proposed order on February 11, 2000. On February 16, 2000, Bennett filed a reply to the Post Kirby defendants' response. The following day, the Post Kirby defendants filed a notice to submit.

¶ 21 On February 28, 2000, apparently having forgotten that it signed the order previously, the trial court once again signed the Post Kirby defendants' proposed order. However, the trial court failed to give notice to the parties that it had signed the proposed order and entered judgment. It was not until May 9, 2000, that the Post Kirby defendants learned of the entry of judgment. Upon discovering the entry of judgment, the Post Kirby defendants served Bennett with a notice of entry of judgment on the following day.

¶ 22 On May 26, 2000, Bennett filed a rule 60 motion to vacate the February 28 order and judgment and to decide its rule 59 motion. Bennett apparently effectively made a rule 59 motion as part of his objections and response to the Post Kirby defendants' proposed order.

¶ 23 On June 9, 2000, Bennett filed a notice of appeal from the February 28 order. However, realizing that the judgment was not final due to the pendency of the rules 60 and 59 motions, Bennett moved to remand and vacate the briefing schedule, which was granted by this court on October 25, 2000.

¶ 24 On October 2, 2000, the trial court heard oral argument on Bennett's May 26 rules 60 and 59 motions. On October 6, 2000, the trial court denied Bennett's rule 60 motion. On February 21, 2001, the trial court heard oral argument on all outstanding motions and issues. The trial court signed an order denying Bennett's outstanding rule 59 motion on February 28, 2001.

¶ 25 At the same time the trial court was addressing the Post Kirby defendants' motion to dismiss, it was also considering the Jones Waldo defendants' dispositive motions. On February 11, 2000, the trial court granted the Jones Waldo defendants' rule 12(b)(6) motion to dismiss. In the minute entry granting the motion, the trial court explained

---

4. The Jones Waldo defendants also argued that the new claims against Baucom and Lowrie were precluded by the statute of limitations because those defendants were not named as defendants until the fourth amended complaint was filed.

that "[a]fter further review of all memoranda and all controlling authorities cited by counsel ... Jones Waldo's [m]otion ... is granted based upon *all* of the analytical points and authorities set forth in Jones Waldo's memorandum in support, reply and oral argument." The trial court failed to give notice to the parties of this entry, and an order of dismissal was not submitted and signed until October 6, 2000.

¶ 26 Eventually, Bennett appealed the trial court's grant of the Jones Waldo defendants' motion to dismiss. However, on February 23, 2001, this court dismissed Bennett's appeal because of the apparent pendency of Bennett's rule 59 motion as to the trial court's entry of judgment in favor of the Post Kirby defendants. Once the trial court issued an order denying Bennett's rule 59 motion and any other outstanding motions on February 28, 2001, the case was finally ripe for appeal.

¶ 27 On appeal, Bennett argues that the trial court erred in granting the Jones Waldo defendants' and the Post Kirby defendants' respective motions to dismiss the fourth amended complaint. As to the Jones Waldo defendants' motion to dismiss, Bennett argues that (1) dismissal of the fourth amended complaint was improper because the complaint sufficiently pled the four causes of action therein, (2) the trial court erred when it dismissed the fourth amended complaint on res judicata or collateral estoppel grounds "without an evidentiary hearing thereon and without entering findings of fact and conclusions of law" when it did so, (3) the trial court erred when it dismissed Bennett's claims even though he had opted out of the underlying class action suit, (4) the trial court erred when it dismissed Bennett's claims against Baucom and Lowrie as barred by the statute of limitations, and in doing so, failed to enter findings of fact and conclusions of law in support of its dismissal on that ground, and (5) the trial court erred in dismissing the fourth amended complaint against the Post Kirby defendants for lack of personal jurisdiction.

¶ 28 The Jones Waldo defendants respond that the trial court did not err in dismissing the fourth amended complaint because (1) it did not state any claims upon which relief could be granted, (2) the fourth amended complaint is essentially an improper collateral attack on the class action settlement and is barred by the doctrine of issue preclusion, and (3) the claims against Baucom and Lowrie are barred by the statute of limitations. Furthermore, the Jones Waldo defendants maintain that the trial court adequately supported its ruling with a brief written statement explaining the grounds for its decision.

¶ 29 The Post Kirby defendants argue that Bennett's appeal of the grant of their motion to dismiss for lack of personal jurisdiction was not timely. In the alternative, the Post Kirby defendants argue that the trial court was correct in dismissing the fourth amended complaint as to the Post Kirby defendants for lack of personal jurisdiction because the Post Kirby defendants did not have sufficient minimum contacts with the state of Utah required by due process of law to justify the trial court's exercising personal jurisdiction over them.

## STANDARD OF REVIEW

¶ 30 "Under rule 12 of the Utah Rules of Civil Procedure, a motion to dismiss is proper 'only where it clearly appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim.' " *Clark v. Deloitte & Touche LLP*, 2001 UT 90, ¶ 14, 34 P.3d 209 (quoting *Prows v. State*, 822 P.2d 764, 766 (Utah 1991)). Therefore, we will affirm the trial court's dismissal "only if it is apparent that as a matter of law, the plaintiff[s] could not recover under the facts alleged." *Id.* (quotation omitted). "Because we consider only the legal sufficiency of the complaint, we grant the trial court's ruling no deference and review it for correctness." *Educators Mut. Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1030 (Utah 1995).

## ANALYSIS

### I. BREACH OF CONTRACT

¶ 31 Bennett's first cause of action in the fourth amended complaint is for breach of

contract. In the proceedings below, the trial court granted the Jones Waldo defendants' motion to dismiss the contract claim on the ground that the complaint failed to adequately plead damages from the alleged breach of contract. Bennett argues on appeal that the cause of action for breach of contract was adequately pled and that he was in fact damaged by the Jones Waldo defendants' breach of the retainer agreement.

¶ 32 "An action for breach of a promise is governed by rules of contract rather than rules of legal malpractice." 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 8.5, at 590 (4th ed.1996) [hereinafter *Legal Malpractice*]. To properly state a cause of action for breach of contract in the context of legal representation and an attorney-client relationship, a plaintiff must plead "(1) [existence of] a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the express promise by the defendant; and (4) damages to the plaintiff resulting from the breach." *Id.*

¶ 33 According to the allegations in the fourth amended complaint, Bennett and the Jones Waldo defendants entered into a contract upon execution of the retainer agreement on April 18, 1990. In addition, Bennett alleges several instances throughout the course of the Jones Waldo defendants' legal representation of him in the Utah and California Gen–Probe litigations in which the Jones Waldo defendants breached specific provisions of the retainer agreement. Bennett also specifically alleges that, as of August 13, 1992, he elected to "opt out" of the proposed class action settlement. As a result of this election, he received from the Jones Waldo defendants a letter indicating that because of Bennett's decision to opt out of the class action settlement, the attorney-client relationship between the Jones Waldo defendants and Bennett was terminated as of the date Bennett opted out.

¶ 34 According to the facts pled in Bennett's complaint, the retainer agreement in this case was in effect from April 18, 1990, to August 13, 1992. By opting out of the class action settlement, Bennett effectively terminated the class counsel's legal representation of him in the matter. *See Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 354 (Tex.2001). The termination of the legal representation was confirmed by the Jones Waldo defendants in a letter to Bennett dated August 17, 1992. For the purpose of evaluating whether the fourth amended complaint states a cause of action for breach of contract, we confine our review of the facts pled in the complaint to the period in which a valid and enforceable contract was in existence. Any facts pled related to the period after the termination of the retainer agreement—that is, any facts related to the bar order litigation—cannot support a cause of action for breach of contract because no valid and enforceable contract existed at that time, an essential element in a cause of action for breach of contract.

¶ 35 Even if we were to assume that all of the facts alleged during the existence of the contract were true, Bennett has failed to state a claim for breach of contract because he has failed to adequately plead valid damages associated with the alleged breaches of contract. Bennett alleges that he was damaged by the Jones Waldo defendants' dismissal of certain named defendants in the California Gen–Probe litigation and the dismissal of derivative claims. Moreover, Bennett alleges that "[b]y being forced to opt out, [he] was ousted from the very lawsuit he had initiated and forced to give up his proprietary interest in the case and his share of the recovery effected therein."

¶ 36 Despite his allegations to the contrary, Bennett was not damaged in the way alleged in the fourth amended complaint by the Jones Waldo defendants' purported breaches of the retainer agreement. The damages alleged by Bennett are premised on a faulty legal assertion, which when corrected demonstrates that as a matter of law Bennett was not damaged by the Jones Waldo defendants' alleged breaches of the retainer agreement.

¶ 37 By opting out of the class action settlement, Bennett preserved his legal claims and position totally. *See, e.g., Thompson v. Edward D. Jones & Co.,* 992 F.2d 187, 191 (8th Cir.1993); *see also* Fed.R.Civ.P. 23(c) advisory committee's notes. Under

federal rule 23, which governs class action lawsuits, and the case law interpreting that rule, Bennett was not "forced to give up his proprietary interest" in the lawsuit or any potential claim or potential recovery from his individual claims by opting out of the proposed settlement. The opt out rule associated with class action suits found in rule 23(c) of the Federal Rules of Civil Procedure "is intended to protect the individual[']s[ ] interest in pursuing [his] own litigation rather than participating in a class action." *Gottlieb v. Q.T. Wiles,* 11 F.3d 1004, 1009 (10th Cir. 1993), *overruled on other grounds sub nom. Devlin v. Scardelletti,* 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1787, at 211 (2d ed. 1996) ("[T]he opt-out procedure in the amended rule preserves the right of a potential class member who feels that his interests are in conflict with or antagonistic to the other class members to bring his own action, and at the same time, assures that differences of opinion within the class will not necessitate a dismissal of the action itself.").

¶ 38 By opting out, Bennett preserved his individual claims and was free to bring those claims in another lawsuit, a notion explicitly acknowledged in the bar order issued after Bennett opted out of the class action settlement. In other words, Bennett's decision to opt out placed him in the same legal position with the same legal claims that he would have been in had his relationship with the Jones Waldo defendants never existed. This being the case, even if we accept as true all of the relevant facts pled in the fourth amended complaint, Bennett cannot as a matter of law recover under a cause of action for breach of contract because he cannot as a

matter of law show he was damaged by the Jones Waldo defendants' alleged breaches.[5]

¶ 39 Therefore, the trial court did not err in dismissing the first cause of action for breach of contract.

## II. LEGAL MALPRACTICE/BREACH OF FIDUCIARY DUTY

¶ 40 Bennett's second cause of action in the fourth amended complaint is for legal malpractice through breach of fiduciary duty. Similar to its rationale with regard to its dismissal of the first cause of action, the trial court granted the Jones Waldo defendants' motion to dismiss the legal malpractice claim on the ground that the complaint did not adequately plead damages to Bennett from the alleged legal malpractice. Bennett argues on appeal that the cause of action for legal malpractice was adequately pled and that he was in fact damaged by the Jones Waldo defendants' legal malpractice.

¶ 41 "In a legal malpractice action, a plaintiff must plead and prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship;[6] (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Harline v. Barker,* 912 P.2d 433, 439 (Utah 1996) (citing *Williams v. Barber,* 765 P.2d 887, 889 (Utah 1988)); *see also Legal Malpractice* § 18.12, at 550–51.

¶ 42 Bennett's claim for legal malpractice suffers from the same deficiency as his breach of contract claim, that is, an inability to show damage from any breach of duty.

¶ 43 As an initial matter, our review of the well pled facts associated with the legal malpractice claim must be confined to those facts and events that fall within the period in

---

5. In addition, Jones Waldo was working with Bennett on a contingency fee basis. Bennett paid nothing to Jones Waldo and therefore was not damaged even to the extent of paying for work from which he did not benefit.

6. In this case, Bennett appears to make claims for breach of fiduciary duty and professional negligence, both of which fall under the broader rubric of legal malpractice. Regardless of whether we classify the cause of action as one for professional negligence or breach of fiduciary

duty or both, the result of our analysis is the same. "Most rules applicable to negligence actions also apply to actions for breach of fiduciary duty." Restatement (Third) of the Law Governing Lawyers § 49 cmt. c, at 348–49 (rev. ed.2000). This is particularly true where, as here, our analysis focuses on the damages element which is common to both a claim for breach of fiduciary duty and professional negligence.

which an attorney-client relationship existed. That period is the same one explained previously, that is, the period from the execution of the retainer agreement to the moment when Bennett exercised his right to opt out of the class action settlement. As previously discussed, *see supra* ¶ 34, Bennett's decision to opt out effectively terminated the Jones Waldo defendants' representation of him. Therefore, only the facts alleged related to the Jones Waldo defendants' representation of Bennett during the Utah and California Gen-Probe litigations are relevant to whether the complaint states a claim for legal malpractice. Any other facts or allegations regarding the Jones Waldo defendants' conduct after the termination of the legal representation of Bennett cannot form the basis of a cause of action for legal malpractice, because the existence of an attorney-client relationship is an indispensable element of a cause of action for legal malpractice. *See Harline*, 912 P.2d at 439.

¶ 44 The damages claimed by Bennett arising out of the Jones Waldo defendants' alleged breaches of duty owed to Bennett during the Utah and California Gen-Probe litigations are no different than the damages pled in connection with the cause of action for breach of contract. Consequently, the second cause of action for legal malpractice is deficient for the same reason that the first cause of action is deficient. Bennett simply cannot plead and has not pled that he was damaged as a result of the Jones Waldo defendants' alleged breaches of duty because by opting out of the class action settlement, he preserved his legal position and his individual causes of action. Bennett's failure to pursue those individual causes of action in connection with the Gen-Probe transaction is not attributable to any conduct by the Jones Waldo defendants and not related to any prior alleged breach of duty by them. Even if we assume all of the allegations in the fourth amended complaint to be true, Bennett cannot show as a matter of law that he was damaged, that is, placed in a worse position as a result of the Jones Waldo defendants' alleged conduct, because his opting out of the class action settlement placed him in the same position he would have been in prior to the instigation of the original Utah

and California Gen-Probe litigations. "Lack of any damages and direct causation is fatal to [any] malpractice claim." *Kinniburgh v. Garrity*, 244 Mont. 350, 798 P.2d 102, 105 (1990).

¶ 45 Therefore, the trial court did not err in dismissing the second cause of action for legal malpractice for failure to state a claim on which relief could be granted.

## III. ABUSE OF PROCESS

¶ 46 Bennett's third cause of action in the fourth amended complaint is for the tort of abuse of process. In granting the Jones Waldo defendants' motion to dismiss this claim, the trial court agreed with and accepted the Jones Waldo defendants' arguments that Bennett failed to state a proper claim for abuse of process. The trial court's dismissal of the abuse of process claims was proper.

¶ 47 A plaintiff may state a cause of action for abuse of process against a person " 'who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed.' " *Gilbert v. Ince*, 1999 UT 65, ¶ 17, 981 P.2d 841 (quoting Restatement (Second) of Torts § 682, at 474 (1977)); *see also Crease v. Pleasant Grove City*, 30 Utah 2d 451, 455, 519 P.2d 888, 890 (1974); *Kool v. Lee*, 43 Utah 394, 403-04, 134 P. 906, 909 (1913); *Keller v. Ray, Quinney & Nebeker*, 896 F.Supp. 1563, 1571 (D.Utah 1995); 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 6.22 cmt. d, at 465 (4th ed. 1996) ("A cause of action for abuse of process requires pleading and proof of two elements: (1) the use of legal process primarily to accomplish a purpose not within the scope of the proceeding for which it was designed; and (2) malice." (footnotes omitted)) [hereinafter *Legal Malpractice*]; Restatement (Second) of Torts § 682 cmt. b, at 475 (1977) ("For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended."); Restatement (Third) of the Law Governing Lawyers § 57 cmt. d, at 432 (rev. ed. 2000) ("A damaged party may recover for abuse of process from one 'who uses a legal process,

whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed.' ").

¶ 48 "The essence of [a cause of action for abuse of process] is a perversion of the process to accomplish some improper purpose...." *Crease*, 30 Utah 2d at 455, 519 P.2d at 890. "[I]f [a legal process] is used for its proper and intended purpose, the mere fact that it has some other collateral effect does not constitute abuse of process." *Id.* at 455, 519 P.2d at 890.

¶ 49 Moreover, "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Restatement (Second) of Torts § 682 cmt. b, at 475; *see also Keller*, 896 F.Supp. at 1572 ("It is recognized that 'even a pure spite motive is not sufficient [to state a claim for abuse of process] where process is used only to accomplish the result for which it was created.' " (citation omitted) (alteration in original)); *Legal Malpractice* § 6.22, at 472–73 (discussing generally motive and malice aspects of abuse of process).

¶ 50 In this case, even when the facts alleged in the fourth amended complaint are accepted as true, Bennett has failed to state a cause of action for abuse of process. Bennett does not allege anywhere in the fourth amended complaint that the legal process of seeking a bar order or contempt sanctions from the California federal district court was used by the Jones Waldo defendants for any purpose other than the one for which it was designed or intended.

¶ 51 According to the allegations of the fourth amended complaint, the Jones Waldo defendants acquired a draft copy of a complaint Bennett was considering filing in Utah court. It was only after receipt and review of this document that the Jones Waldo defendants initiated the legal process of obtaining a bar order from the California federal district court. The Jones Waldo defendants initiated the bar order litigation to protect the class action settlement from a potential lawsuit from Bennett that they perceived to be a collateral attack on the class action settlement.

¶ 52 The purpose and design of the legal mechanism of a bar order is to protect class action settlements from collateral attack, thus insuring their long-term viability and stability and final resolution of class actions. There is no claim in the fourth amended complaint that the Jones Waldo defendants used the bar order litigation or the subsequent contempt sanction requests for any purpose other than the one for which they were intended. Bennett even alleges in the fourth amended complaint that the Jones Waldo defendants' single purpose for pursuing the bar order and contempt sanctions was to deter him from filing his legal action, a valid purpose for and use of those legal processes and mechanisms especially in light of the Jones Waldo defendants' perception that Bennett's legal action was a collateral attack on the class action settlement.

¶ 53 The fact that certain consequences flowed from the bar order litigation or that the bar order litigation had some collateral negative effect on Bennett such as the expenditure of time and resources in defending the bar order litigation or emotional strain or reputational damage as a result of the bar order litigation is not sufficient to state a cause of action for abuse of process. *See Crease*, 30 Utah 2d at 455, 519 P.2d at 890.

¶ 54 At best, Bennett's fourth amended complaint alleges facts that the Jones Waldo defendants pursued the bar order litigation with a spiteful or hateful motive and that they initiated the legal process to protect their legal fees earned in the class action settlement. Even if these allegations are accepted as true, such motivations are insufficient to state a claim for abuse of process where the legal process was used "for the purpose for which it [was] intended." Restatement (Second) of Torts § 682 cmt. b, at 475.

¶ 55 In this case, the Jones Waldo defendants used the bar order litigation to protect the class action settlement from a perceived collateral attack from Bennett's Utah lawsuit, precisely the purpose for which the legal process or mechanism of a bar order is intended. Moreover, the Jones Waldo defen-

dants' request of the California federal district court to hold Bennett in contempt of the bar order was made to enforce the bar order, precisely the purpose for which the legal process or mechanism of judicial sanction is intended.

¶ 56 Because Bennett failed to allege that the Jones Waldo defendants used a legal process against him primarily to accomplish a purpose for which it was not designed and failed to plead any facts that would support such an inference, the fourth amended complaint fails to state a cause of action for abuse of process and the trial court was correct in dismissing Bennett's cause of action for abuse of process.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 57 Bennett's third cause of action in the fourth amended complaint also purports to state a claim for the tort of intentional infliction of emotional distress. In granting the Jones Waldo defendants' motion to dismiss this claim, the trial court agreed with and accepted the Jones Waldo defendants' arguments that Bennett failed to state a proper claim for intentional infliction of emotional distress, specifically that Bennett had failed to plead facts indicating that the Jones Waldo defendants' conduct was extreme, outrageous, and intolerable to the level of offending generally accepted standards of decency and morality. On appeal, the Jones Waldo defendants renew their arguments accepted by the trial court. Bennett argues that the facts pled in the fourth amended complaint are sufficient to state a claim for intentional infliction of emotional distress.

 ¶ 58 In order to state a claim for intentional infliction of emotional distress, a plaintiff must plead facts that demonstrate that the defendant

" 'intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known

that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.' "

*Franco v. The Church of Jesus Christ of Latter-day Saints,* 2001 UT 25, ¶ 25, 21 P.3d 198 (quoting *Jackson v. Brown,* 904 P.2d 685, 687–88 (Utah 1995) (quoting *Samms v. Eccles,* 11 Utah 2d 289, 293, 358 P.2d 344 (1961))); *see also Prince v. Bear River Mut. Ins. Co.,* 2002 UT 68, ¶ 37, 56 P.3d 524; *Campbell v. State Farm Mut. Auto. Ins. Co.,* 2001 UT 89, ¶ 108, 65 P.3d 1134.

¶ 59 In addition, this court has cautioned:

"Due to the highly subjective and volatile nature of emotional distress and the variability of its causations, the courts have historically been wary of dangers in opening the door to recovery therefor. This is partly because such claims may easily be fabricated: or as sometimes stated, are easy to assert and hard to defend against."

*Franco,* 2001 UT 25 at ¶ 25, 21 P.3d 198 (quoting *Samms,* 11 Utah 2d at 291, 358 P.2d at 345).

 ¶ 60 Therefore, "the sufficiency of [Bennett's] pleadings 'must be determined by the facts pleaded rather than the conclusions stated.' " *Id.* at ¶ 26 (quoting *Ellefsen v. Roberts,* 526 P.2d 912, 915 (Utah 1974)).

¶ 61 The facts alleged in Bennett's complaint can be divided into two categories: those facts related to the California litigation and those facts related to the bar order litigation.

 ¶ 62 In the first category, Bennett has pled the following operative facts: [7]

♦ "Jones Waldo and Post Kirby defendants initiated and pursued a misleading scheme to settle the Gen–Probe case...."

♦ The Jones Waldo and Post Kirby defendants opposed Bennett's opinions about settlement and never honored

---

7. In his reply brief on appeal, Bennett included a chart entitled "SUMMARY CHART OF EACH CAUSE OF ACTION UNDER UTAH LAW AND THE CORRELATIVE PARAGRAPHS IN DAVID BENNETT'S COMPLAINT," which purports to

"present detailed particulars in support of claims pleaded in plaintiff's fourth amended complaint." The operative facts set forth in this opinion were drawn from the fourth amended complaint.

named plaintiff Frank Bennett's request for a professional evaluation of the class action claims.

♦ "Defendants Kirby and Burton threatened David Bennett on December 3, 1991 that he should not be 'difficult' about settling the case quickly ...."

♦ "[I]n retaliation for David Bennett's position against early settlement, James Peters of defendant law firm Jones Waldo angrily threatened plaintiff David Bennett that he would not thereafter be allowed to continue as liaison client to attend an upcoming December 18, 1991 conference in California."

♦ "The defendants Jones Waldo, its lawyers and agents wrongly pressured David Bennett ... to acquiesce in the lawyers' interest in immediate settlement. Defendant lawyers threatened David Bennett ... that [he] should not communicate with [other named plaintiffs] except through counsel."

♦ The Jones Waldo and Post Kirby defendants denied Bennett access to a copy of a hearing transcript for almost six months.

♦ "Jones Waldo conceived and began carrying out a scheme and artifice to impose the settlement on their clients by creating fear that if the case were lost, David Bennett ... could be required to pay hundreds of thousands of dollars in out-of-pocket costs."

♦ "Defendant Baucom and other Jones Waldo lawyers pressured David Bennett ... to testify under oath that they had personally assumed an obligation to pay assessed costs, thus shielding the lawyers from that obligation."

♦ "The aforesaid strategy of the Jones Waldo Defendants was conceived with the intent, and actually did convince David Bennett that despite the contrary provisions in the Retainer Agreement, he may be held personally liable to pay costs which might be assessed in the case."

♦ "Defendant Baucom warned Plaintiff David Bennett at a May 27, 1992 meeting that if he, David, sent a letter criticizing the lawyers or the settlement to the Court or to anyone else that the Jones Waldo law firm would 'declare war' on him (as they did)."

♦ "[T]he defendant lawyers continued pressure and harassment which subjected David Bennett to extreme emotional distress."

♦ "Baucom ... maliciously threatened that if the class were not certified as a result of [Bennett's] objections, Bennett would be personally sued, 'probably by someone in California.'"

♦ All of the acts that allegedly constituted legal malpractice were outrageous conduct committed for the purpose of inflicting extreme emotional distress.

¶ 63 Bennett's complaint alleges no action by the Jones Waldo defendants that can be "considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Id.* (quotations omitted); *see also Tappen v. Ager,* 599 F.2d 376, 382 (10th Cir.1979) (affirming dismissal for failure to state a claim in cause of action for intentional infliction of emotional distress where alleged conduct involved filing of lawsuit that was allegedly baseless and result of inadequate investigation and violation of legal duty on attorney's part); *Thornton v. Squyres,* 317 Ark. 374, 877 S.W.2d 921, 923 (1994) ("The tort of [intentional infliction of emotional distress] is not one that can merely be substituted for a legal malpractice claim which involves inattentive, unprofessional or negligent action of an attorney."); *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 6 Cal.Rptr.2d 151, 169 (1992) (affirming demurrer to claim for intentional infliction of emotional distress because threat of or attempt to resort to legal process cannot give rise to cause of action for intentional infliction of emotional distress); *Beecy v. Pucciarelli,* 387 Mass. 589, 441 N.E.2d 1035, 1037, 1040 (1982) (holding that claim for intentional infliction of emotional distress involving erroneous commencement and prosecution of collection action should have been dismissed for failure to state a claim because such conduct was not outrageous); *Green v. Leibowitz,* 118 A.D.2d 756,

500 N.Y.S.2d 146, 148 (1986) (dismissing cause of action for legal malpractice and intentional infliction of emotional distress where "conduct complained of[,] intentional misrepresentations concerning the status and filing of the plaintiff's disability claim, does not rise to a level of 'extreme outrage' ").

¶ 64 "To be considered outrageous, 'the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair.' " *Franco,* 2001 UT 25 at ¶ 28, 21 P.3d 198 (quoting 86 C.J.S. *Torts* § 70, at 722). Conduct " 'is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal.' " *Id.* (quoting 86 C.J.S. *Torts* § 70, at 722–23). "The liability [for intentional infliction of emotional distress] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d (1965). Therefore, Bennett has failed to state a claim for intentional infliction of emotional distress based on the facts pled concerning the Jones Waldo defendants' alleged conduct associated with the Utah and California Gen–Probe litigations, because none of that conduct as a matter of law can be "considered outrageous and intolerable in that [it] offend[s] against the generally accepted standards of decency and morality." *Franco,* 2001 UT 25 at ¶ 25, 21 P.3d 198.

¶ 65 As to the operative facts pled in relation to the Jones Waldo defendants' conduct in connection with the bar order litigation, Bennett alleges in the fourth amended complaint that

[a]s a proximate result of the actions committed against him by [the Jones Waldo defendants], David Bennett has suffered extreme mental and emotional distress and reputational damage arising from (1) being wrongfully issued a contempt citation; (2) anxiety concerning the damage to his personal and professional reputation and career; (3) fear of incarceration at the hands of [the California judge]; (4) fear of the

financial consequences of the Bar Order and contempt proceedings; and (5) the financial pressure of being required to pay costs and attorneys [sic] fees of some $225,000 in defending against and appealing the injunction and contempt citation.

This allegation essentially focuses on the initiation of the bar order litigation and the legal process employed to enforce the bar order as the "outrageous" conduct by the Jones Waldo defendants that induced the alleged severe emotional distress in Bennett. The allegation of this conduct is not sufficient to state a claim for intentional infliction of emotional distress.

¶ 66 An allegation of improper filing of a lawsuit or the use of legal process against an individual is not redressable by a cause of action for intentional infliction of emotional distress. *See Cantu,* 6 Cal.Rptr.2d at 169 ("Where . . . a party acts in good faith to pursue its own legal rights, such conduct is privileged, even if emotional distress will result.").

¶ 67 Moreover, even if we were to assume that the Jones Waldo defendants' alleged conduct in connection with the bar order litigation, that is, their statements to the court during the judicial proceeding and the use of the legal process itself, were sufficiently outrageous, Bennett's claim for intentional infliction of emotional distress is barred by the judicial proceeding privilege.[8] *See DeBry v. Godbe,* 1999 UT 111, ¶ 25, 992 P.2d 979 (affirming dismissal of claim for intentional infliction of emotional distress because "the judicial proceeding privilege extends not only to defamation claims but to all claims arising from the same statements" (quotation omitted)); *see also Price v. Armour,* 949 P.2d 1251, 1258 (Utah 1997).

¶ 68 Finally, with regard to the conduct pled in connection with the bar order litigation and contempt proceedings, Bennett's claim for intentional infliction of emotional distress was properly dismissed because Bennett alleged that the Jones Waldo defendants' purportedly outrageous conduct

---

8. Even though the trial court did not rely on this reasoning in dismissing the cause of action for intentional infliction of emotional distress, we may affirm the trial court's dismissal on this alternate ground. *See Bailey v. Bayles,* 2002 UT 58, ¶ 10, 52 P.3d 1158.

was actually committed not for the purpose of inflicting emotional distress on Bennett but instead to intimidate and deter him from instigating this action in Utah. Bennett alleges in the fourth amended complaint that "[i]n causing [the bar order] to issue, the defendant lawyers were acting for one real purpose only: to take advance action to prevent David Bennett from prosecuting any action for damages for breach of contract, breaches of fiduciary obligation or legal malpractice against themselves and their law firms."

¶ 69 According to Bennett's own pleadings, the Jones Waldo defendants' bar order related conduct was not "intentionally engaged in . . . with the purpose of inflicting emotional distress." *Franco*, 2001 UT 25 at ¶¶ 25, 27, 21 P.3d 198 (quotations omitted). Therefore, the fourth amended complaint fails to state a cause of action with regard to the conduct associated with the bar order litigation, and the trial court did not err in dismissing this cause of action.

## V. DECEIT OR COLLUSION UNDER UTAH CODE ANN. § 78–51–31

¶ 70 Bennett's fourth and final cause of action in the fourth amended complaint purports to state a claim for deceit and collusion under section 78–51–31 of the Utah Code. Utah Code Ann. § 78–51–31 (1996). Once again, the trial court accepted the Jones Waldo defendants' arguments that Bennett had failed to properly plead a cause of action for deceit and collusion in dismissing this claim. On appeal, the Jones Waldo defendants simply renew their arguments accepted by the trial court below and Bennett maintains that the fourth amended complaint pleads facts sufficient to state a claim under section 78–51–31.

¶ 71 Section 78–51–31 provides:

An attorney and counselor who is guilty of deceit or collusion, or who consents thereto, with intent to deceive a court or judge or a party to an action or proceeding is liable to be disbarred, and shall forfeit to the injured party treble damages to be recovered in a civil action.

This statute was first enacted in Utah in 1898. It has rarely been amended and merely recodified since its enactment over a century ago. The statute appears in the title and chapter of the Utah Code dealing with the regulation of attorneys. In the more than one hundred years section 78–51–31 has been in existence, neither Utah appellate court has been presented with a case requiring its interpretation. The interpretation of this statute and the definition of the elements of a cause of action under the statute is an issue of first impression.

¶ 72 Our interpretation of this section of the Utah Code is posthumous in that this section was repealed effective April 30, 2001. *See* S.B. 13, 54th Leg., Gen. Sess., 2001 Utah Laws 5–6. Because the conduct alleged in the fourth amended complaint occurred while the statute was still in effect, Bennett may attempt to state a cause of action under the statute because the law as it existed at the time of the events that give rise to a suit governs. *See WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, n. 3, 54 P.3d 1139 (citing *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, n. 2, 44 P.3d 680).

¶ 73 Section 78–51–31 does not create a separate and distinct cause of action, but rather merely provides for recovery of treble damages for a cause of action for the common law tort of deceit in a civil action.[9] *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 666–67 (Ind.Ct.App.2002); *Anderson v. Anderson*, 399 N.E.2d 391, 402–03 (Ind.Ct. App.1979); *Love v. Anderson*, 240 Minn. 312, 61 N.W.2d 419, 422 (1953); *Smith v. Chaffee*, 181 Minn. 322, 232 N.W. 515, 517 (1930). A

---

9. Bennett seeks to use section 78–51–31 to treble the damages for every cause of action he pleads in the fourth amended complaint, including the causes of action for breach of contract and legal malpractice. This is incorrect. Section 78–51–31's allowance for the trebling of damages relates only to the underlying cause of action for the common law tort of deceit. If a plaintiff successfully recovers in a civil action under a cause of action for deceit, the damages assessed for that cause of action will be trebled under section 78–51–31. This provision does not permit all damages recovered for all causes of action to be trebled simply because a plaintiff successfully prosecutes a claim for deceit. *See Olson v. Fraase*, 421 N.W.2d 820, 832 (N.D.1988) (construing similar North Dakota deceit and collusion statute).

plaintiff wishing to rely on section 78–51–31 must adequately plead a cause of action for the common law tort of deceit as the predicate claim to this damage trebling provision. *Accord Anderson*, 399 N.E.2d at 403.

¶ 74 To properly state a claim for the tort of deceit, a complaint must plead the following elements of that cause of action:

1. A false representation of fact made by the defendant[.] 2. Knowledge or belief of the defendant that the representation was false (often called scienter). 3. An intention to induce the defendant to act or refrain from acting in reliance. 4. Justifiable reliance by plaintiff upon the representation in taking action or in refraining from it. 5. Damage suffered by plaintiff [as a result].

*Tenneco Oil Co. v. Joiner*, 696 F.2d 768, 773 (10th Cir.1982) (citing William Prosser, *Law of Torts* 685).

¶ 75 In his fourth amended complaint, Bennett alleges myriad instances of purported deceit, misrepresentation, falsehoods, and lies perpetrated by the Jones Waldo defendants and the Post Kirby defendants in connection with the California Gen–Probe litigation, designed to induce or force an early and, in Bennett's opinion, inadequate class action settlement. Even if we were to assume that these facts are true, the complaint fails to state a claim because Bennett cannot possibly maintain that he justifiably relied upon those alleged misrepresentations to his detriment. According to Bennett's complaint, the Jones Waldo and Post Kirby defendants attempted to induce Bennett to accept a premature and inadequate settlement of the class action. However, by opting out of the class action settlement, that is, by not relying at all on the Jones Waldo and Post Kirby defendants' alleged misrepresentations, Bennett preserved his legal position totally. All of his individual and derivative claims against Gen–Probe and any other defendants in the original Utah and California Gen–Probe litigations were unaffected by the class action settlement because he opted out. In other words, Bennett cannot show that he relied upon the alleged misrepresentations or that he was damaged by defendants' conduct in this case in connection with the California Gen–Probe

litigation because his opting out of the class secured his position to bring his legal claims individually at a later time. Because Bennett was left in the same position after opting out of the class action settlement that he was in prior to the initiation of the Utah and California Gen–Probe litigations and defendants' alleged misrepresentations and lies, he cannot show that he was damaged by defendants' alleged misconduct. Therefore, Bennett's fourth amended complaint fails to state a claim with regard to the facts pled in connection with defendants' alleged conduct related to the California Gen–Probe litigation and the class action settlement.

¶ 76 Bennett also alleges that the Jones Waldo and Post Kirby defendants deceived the California federal district court and the Utah district court in prosecuting the bar order litigation and subsequent contempt proceedings before the California federal district court. The fourth amended complaint also fails to state a cause of action in this regard.

¶ 77 Bennett's claim for deceit is also barred by the common law judicial proceeding privilege. *See DeBry v. Godbe*, 1999 UT 111, ¶ 25, 992 P.2d 979; *see also Janklow v. Keller*, 90 S.D. 322, 241 N.W.2d 364, 367, 370 (1976) (citing Restatement of Torts § 586, at 229, and holding that where complaint alleged that defendant attorneys had filed a petition and made statements "with intent to injur[e] the plaintiff and falsely mislead the courts" action for deceit was barred by absolute privilege during judicial proceedings). "[T]he judicial proceeding privilege extends not only to defamation claims but to 'all claims arising from the same statements.' " *DeBry*, 1999 UT 111 at ¶ 25, 992 P.2d 979 (quoting *Price v. Armour*, 949 P.2d 1251, 1258 (Utah 1997)). "The whole purpose of the judicial privilege is to ensure free and open expression by all participants in judicial proceedings by alleviating any and all fear that participation will subject them to the risk of subsequent legal actions." *Price*, 949 P.2d at 1258.

¶ 78 For this reason, the trial court did not err in dismissing the fourth amended complaint's cause of action for deceit and

collusion based upon the facts pled in connection with the bar order litigation.[10]

¶ 79 Therefore, the trial court did not err when it dismissed for failure to state a claim Bennett's fourth cause of action for deceit and collusion under section 78-51-31 of the Utah Code.

## VI. PERSONAL JURISDICTION

¶ 80 Because we have concluded that the trial court did not err in dismissing Bennett's fourth amended complaint in its entirety for failure to state a claim for which relief may be granted against the Jones Waldo defendants, we need not delve into the question of personal jurisdiction related to the Post Kirby defendants, but instead assume without deciding that Utah may exercise personal jurisdiction over the Post Kirby defendants. Assuming jurisdiction, we affirm the trial court's dismissal of the fourth amended complaint as to the Post Kirby defendants on the alternate, yet identical, grounds upon which we affirm the dismissal of the complaint against the Jones Waldo defendants. The fourth amended complaint does not allege distinct conduct on the part of the Jones Waldo or Post Kirby defendants that would warrant a separate analysis for the two sets of defendants. Therefore, because the fourth amended complaint fails to state a claim against the Jones Waldo defendants, it also fails to state a claim against the Post Kirby defendants.

## CONCLUSION

¶ 81 For the foregoing reasons, the trial court's dismissal of the fourth amended complaint against the Jones Waldo defendants and the Post Kirby defendants is affirmed.

¶ 82 Chief Justice DURHAM, Associate Chief Justice DURRANT, Judge GREENWOOD, and Judge ORME concur in Justice RUSSON's opinion.

¶ 83 Having disqualified himself, Justice WILKINS does not participate herein, and Justice HOWE did not participate herein;

Court of Appeals Judges PAMELA T. GREENWOOD and GREGORY K. ORME sat.

---

10. Even though the trial court did not rely on this reasoning in dismissing the cause of action for deceit and collusion, we may affirm the trial court's dismissal on this alternate ground. *See Bailey v. Bayles,* 2002 UT 58, ¶ 10, 52 P.3d 1158.